J. C. O'Brien, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

1. **Railroads:** INJURY TO EMPLOYEE: SETTLEMENT: FRAUD: RIGHT OF ACTION. Where a settlement with a brakeman, on account of damages sustained from a personal injury, was procured by a railroad company under representations that all of the eyewitnesses of the accident in which the injury was received were against him as to the cause of the accident, which was untrue, and that the superintendent of one of the divisions of the road had yard work which said brakeman could

do, that he would put him to work, and that he could always have work as long as he behaved himself, when in fact said superintendent did not have any positions in the yard, and the brakeman was refused work after several applications, and after waiting a reasonable time therefor, and the jury found that the brakeman was not in such a condition mentally at the time of the settlement as to be able to attend to business, and understand the nature and effect of the release when he signed it, *held*, that the settlement was not a bar to an action for damages for the injury sustained.

2. **Evidence:** OPINIONS.  Questions as to a witness' physical, mental and nervous condition at the time of a stated business transaction are not objectionable as calling for an opinion.

3. **Settlement:** RESCISSION ON ACCOUNT OF FRAUD: ACTION WITHOUT TENDER OF BENEFITS RECEIVED.  The settlement with the plaintiff having been procured by fraud, and he being entitled to retain the benefits received thereunder, either by virtue of said settlement or of the defendant's original liability, *held*, that a tender of the return of the amount received under the settlement was not necessary before an action could be maintained upon the original liability of the defendant.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

FRIDAY, JANUARY 19, 1894.

ACTION at law to recover damages for a personal injury which the plaintiff sustained while engaged in the service of the defendant as brakeman on a freight train.   There was a trial by jury, and a verdict and judgment for the plaintiff.   The defendant appeals.— *Affirmed.*

*Mills & Keeler*, for appellant.

The neglect of the plaintiff to return the money received under the settlement is fatal to his recovery. He can not repudiate the contract of settlement, upon the ground of fraud, while retaining all the fruits thereof.   Prompt return, or tender, of the money received was a condition precedent to suit upon the original cause of action.  *East Tenn., Va. & Ga. R'y*

*Co. v. Hayes*, 10 S. E. Rep. 350; 15 S. E. Rep. 361; *Kreuzen v. R'y Co.*, 13 N. Y. Supp. 588; *Peterson v. R'y Co.*, 31 N. W. Rep. (Minn.) 516; *Bisbee v. Ham*, 47 Maine, 543; *Gould v. Cayuga Bank*, 86 N. Y. 75; *McMichael v. Kilmer*, 76 N. Y. 36; *Brown v. Hartford Ins. Co.*, 117 Mass. 479; *Schiffer v. Dietz*, 83 N. Y. 300; *Bairds v. Mayor, etc.*, 96 N. Y. 598; *Cobb v. Hatfield*, 46 N. Y. 536; *Rigdon v. Walcott*, 31 N. E. Rep. (Ill.) 161; *Deane v. Lockwood*, 115 Ill. 490; *Strong v. Lord*, 107 Ill. 25; *Estabrook v. Swett*, 116 Mass. 303; *Coolidge v. Brigham*, 42 Mass. 550; *Kimball v. Cunningham*, 4 Mass. 502; *Merrill v. Wilson*, 33 N. W. Rep. (Mich.) 721; 1 Bigelow on Frauds [Ed. 1888], 420; *Van Vechten v. Smith*, 59 Iowa, 177. The money was paid upon the settlement, as consideration therefor, and not as a mere gratuity. The court required the jury to allow it as so much paid on account. This instruction was radically erroneous. 1 Bigelow on Frauds [Ed. 1888], 425; *Rigdon v. Walcott*, 31 N. E. Rep. 162; *Bisbee v. Ham*, 47 Maine, 547; *Gould v. Cayuga Bank*, 86 N. Y. 84, and other cases cited above. Again, even if obtained by fraud as charged, still O'Brien afterward recognized and ratified the contract of settlement, by retaining and using the consideration received therefor, after knowledge of the facts; and then by bringing suit to enforce an alleged provision of the contract, regarding future employment. A person who has been defrauded must act promptly; and if he would repudiate the contract he must do nothing in affirmance of it after ascertaining the facts. Moreover, he can not repudiate it, and retain the fruits or benefits of the transaction at the same time. *Merrill v. Wilson*, 33 N. W. Rep. (Mich.) 721; *Gould v. Cayuga Bank*, 86 N. Y. 82; *R'y Co. v. Brazzil*, 14 S. W. Rep. 609; *R'y Co. v. Brazzil*, 10 S. W. Rep. 406; *Peterson v. C., M. & St. P. R'y Co.*, 31 N. W. Rep. 516; *Cobbs v. Hatfield*, 46 N. Y. 537; *Baird v. Mayor, etc.*, 96 N. Y. 598. Where

the creditor brings an action to recover damages for the fraud, retaining what he has received, he thereby affirms the compromise. *Walsh v. Sisson*, 49 Mich. 423; *Merrill v. Wilson*, 33 N. W. Rep. (Mich.) 721; *Butler v. Hildreth*, 46 Mass. 49; *Buckley v. Morgan*, 46 Conn. 393; *Strong v. Strong*, 102 N. Y. 73. Settlements deliberately made, in writing, can not be impeached upon such flimsy pretexts as made in this case. *Wallace v. R'y Co.*, 67 Iowa, 550; *Gulliher v. R'y Co.*, 59 Iowa, 422; *R'y Co. v. Cox*, 76 Iowa, 310; *McCormack v. Molberg*, 43 Iowa, 562; *McKinney v. Herrick*, 66 Iowa, 414; *Jenkins v. Clyde Coal Co.*, 48 N. W. Rep. 971; *Roundy v. Kent*, 75 Iowa, 666; *Spitze v. B. & O. R'y Co.*, 23 Atl. Rep. (1892) 310. Also *Pa. R'y Co. v. Shay*, 82 Pa. St. 202. A mere failure to perform an agreement never constitutes fraud. *Van Vechten v. Smith*, 59 Iowa, 177; *Spitze v. R'y Co.*, 23 Atl. Rep. 309. A promise to be performed in the future, although intentionally broken, is insufficient to avoid a contract of settlement, upon the ground of fraud. *Gulliher v. R'y Co.*, 59 Iowa, 422; *Rose v. R'y Co.*, Atl. Rep. (Pa.) 82; *Van Vechten v. Smith*, 59 Iowa, 177; *Lumpkin v. Snook*, 63 Iowa, 519. Fraud, in general, consists in the misrepresentation of matters of fact, not in the failure to keep a promise, thereafter to do or omit something. *Hazlett v. Burge*, 22 Iowa, 538; *Hartshorn et al. v. Day*, 19 How. 211; *Osterhouse v. Shoemaker et al.*, 3 Hill (N. Y.) 513; *Belden v. Davies*, 2 Hall (N. Y.) 433; *Franchot v. Leach*, 5 Cow. (N. Y.) 506; Swayne, J., in *George v. Tate*, 102 U. S. 570; *Byard v. Holmes*, 34 N. J. Law, 296; *Taylor v. Fleet*, 1 Barb. 471; *Frenzel v. Miller*, 37 Ind. 3. To avoid a contract on the ground of fraud, the facts, and not the law, must have been misrepresented. Both parties to a compromise are bound to know the law, and whether they have a good case or not. 8 Am. and Eng. Encyclopedia of Law, 636, title, "Fraud." Fraud will not

be presumed, when the facts upon which it is sought to predicate it are consistent with honesty and good faith. *Lyman v. Cessford*, 15 Iowa, 229; *Schofield v. Blind*, 33 Iowa, 176; *Pritchard v. Hopkins*, 52 Iowa, 122. The true doctrine undoubtedly is that the circumstances relied on to show fraud must lead naturally and fairly to the conclusion sought to be established, and must be inconsistent with any other reasonable or probable theory. *Turner v. Younker*, 76 Iowa, 261; *Turner v. Hardin*, 80 Iowa, 695. The evidence of fraudulent misrepresentations, to set aside a release of damages for personal injury, must be clear, precise, and indubitable; otherwise it should be withdrawn from the jury. A *scintilla* of evidence is not enough. *Pa. R'y Co. v. Shay*, 82 Pa. St. 202. The law favors such settlements of controversies, and finds a consideration for the contract looking to the compromise, in the mutual agreement of the parties to abide the result of the settlement. *Richardson, etc., Co. v. Ind. Dist.*, 70 Iowa, 576; *Adams v. Morton*, 37 Iowa, 257; 3 Am. and Eng. Encyclopedia of Law, 837, and cases cited; *Kinser v. Soap Creek Coal Co.*, 51 N. W. Rep. 1153. There can be no doubt that the release was not void, *i. e.*, a nullity, even if obtained by false and fraudulent representations. At most, it was simply voidable at the election of the injured party. O'Brien alone could disaffirm it. Until he did so, it was binding upon the company. Bishop on Contracts, secs. 671, 678 and 692; 3 Am. and Eng. Encyclopedia of Law, 931, and cases cited. *Rigdon v. Wolcott*, 31 N. W. Rep. 161.

*Rickel, Crocker & Christie*, for appellee.

The very fact that a release in full has been obtained for all claims for damages for so severe an injury for so small a consideration, is sufficient in itself to call for an explanation as to the transaction, and is strong evidence of fraud. *Cleere v. Cleere*, 3 S. Rep.

111; 2 Pom. Eq. Jur., sec. 927; *Saltonstall v. Gordon,* 33 Ala. 149; *Huguenin v. Basely,* 2 Lead. Cas. Eq. 1238; 2 Story's Equity Jurisprudence [2 Ed.] sec. 928. The disparity between the parties was a question to be taken into consideration by the jury in determining whether the release was obtained by fraud, oppression or undue influence. *Conner v. Dundee Chemical Works,* 17 Atl. Rep. 975; *Bussian v. M. L. S. & W. R'y,* 10 Am. & Eng. R. R. Cases, 716. If the release was obtained by fraud, it was void, and should no more be considered than as if it never existed. This court has expressly held that if a contract is procured by fraud, a party is not required to pay or tender back the consideration paid before bringing an action in disregard of it. *Hendrickson v. Hendrickson,* 51 Iowa, 65. The matter has also been passed upon by other courts who have taken the same views as are contended for by appellee herein. *C., R. I. & P. R'y Co. v. Lewis,* 109 Ill. 120; s. c., 19 Am. & Eng. R. R. Cases, 224–230; *C., R. I. & P. v. Doyle,* 18 Kansas, 58; *Kley v. Healey et al.,* 28 N. E. Rep. 592; *Allerton v. Allerton,* 50 N. Y. 670. If, as the evidence tended to show, that the plaintiff never assented, by reason of his incapacity, to the terms of the release, but was induced by the representations of the defendant, into the belief that the paper he signed was simply a voucher for an amount of money equal to four months' pay, it would not constitute a release of plaintiff's claim for such personal injuries. *C., R. I. & P. R'y Co. v. Lewis,* 109 Ill. 120; *Ill. Cent. R'y Co. v. Welch,* 52 Ill. 183; *Mueller v. Old Colony R'y Co.,* 127 Mass. 86.

Rothrock, J.—The plaintiff was rear brakeman on a freight train running between Savanna, Ill., and Van Horne, Iowa. At the time he sustained the injury for which this action was brought he was about forty years old, had a family, and had been in railroad ser-

vice for fifteen years. He had been in the employ of the defendant for about four months. On the eighth day of September, 1890, while engaged in said employment, his left hand was crushed, while attempting to make a coupling, so that it was necessary to amputate three fingers. It appears that the two cars which were to be coupled together were equipped with what is known as the "Janney coupler," which is a new improved devise. This coupler may be attached to the old style coupler by the use of a link and pin, and there was a link and pin in one of the couplers, which it was necessary to remove before the cars came together. The link and pin were in the standing or dead car. The plaintiff claims that, as the train was backed down toward the standing car, he observed the link and pin, and, knowing that they must be removed, he signaled the engineer to stop the train, and his signal was obeyed, and the train stopped, when he went between the cars to remove the link and pin; that the pin was fast, and could not readily be removed, and while engaged in the attempt to remove it he was standing with his back toward the train; when, without any signal or sign from him, the train was carelessly and negligently backed down upon him, and his hand caught between the couplers, and was crushed. Some two or three other employees testified as witnesses in contradiction to the testimony of the plaintiff, to the effect that he did not give a signal for the train to stop, and that it did not stop, but moved down to the dead car in obedience to the plaintiff's signal. It will be seen that there was a square conflict in the evidence upon that vital question in the case. We do not understand that it is claimed that the judgment should be reversed on the ground that the evidence was not sufficient to authorize a finding by the jury that the employees of the plaintiff were negligent, and that the injury was caused without any negligence of

the plaintiff which contributed to produce the injury.

I. The principal controversy on the trial in the court below arose upon an alleged settlement and release of damages, which was in writing, and signed by the plaintiff. It is in these words:

1. RAILROADS: injury to employees: settlement: fraud: right of action.

"The Chicago, Milwaukee & St. Paul Railway Company, C. & C. B. Division, to J. C. O'Brien, Dr., residing at Delta, Iowa.

| 1890. | | Amount. |
|---|---|---|
| December 5. | To this amount paid in full settlement of any and all claims against said railway company on account of personal injury as stated below... | $250 00 |
| | Less paid Wm. Simpson for board.......... | 39 50 |
| | | $210 50 |

"Received of the Chicago, Milwaukee & St. Paul Railway Company two hundred and fifty dollars, in full payment of the above account. In consideration of the payment of the said sum of money, I, J. C. O'Brien, of Delta, in the county of Keokuk, and state of Iowa, hereby remise, release, and forever discharge the said company of and from all manner of actions, cause of action, suits, debts, and sums of money, dues, claims, and demands whatsoever, in law or equity, which I have ever had or now have against said company, by reason of any matter, cause, or thing. whatever, whether the same arose upon contract or upon tort, and especially from all claim which I now have or may hereafter have, arising in any' manner whatever, either directly or indirectly, in whole or in part, from or on account of personal injuries received at Sabula Junction, Iowa, on or about September 8, 1890, resulting in loss of my first, third, and fourth fingers of my left hand.

"In testimony thereof, I have hereunto set my hand this fifth day of December, 1890.

"J. C. O'BRIEN."

The plaintiff claimed in his pleadings, and introduced evidence tending to show, that the said settlement and release was obtained from him by fraud and the false representations of the agent or officer of the defendant who procured his signature thereto. It is not our purpose to set out the pleadings of the plaintiff in detail. They are verbose and extravagant in statement, and contain many averments which are founded in mistake when read in connection with the evidence produced on the trial. But the pleadings do not appear to have been verified, and, after eliminating the mistakes, we think the evidence that this writing was procured by fraud and by overreaching the plaintiff was sufficient to authorize a verdict for him. And it is claimed by the plaintiff that he was in such physical and mental distress at the time the settlement was signed by him that he was incapable of entering into a valid contract of settlement. It is not our purpose to enter into a discussion of the evidence. We will state the ultimate facts which we think the jury were justified in finding from the evidence. This settlement was made by one Hinsey, upon the part of the defendant. He had been for many years engaged in settling claims of this character. He represented to the plaintiff that all of the trainmen who were eyewitnesses to the affair were against the plaintiff. He read part of the statements which had been procured from them, and stated that all were alike. This was not true. The statement of the conductor of the train was not inconsistent with the plaintiff's right to recover. He represented to the plaintiff that Division Superintendent Goodnow, at Marion, in this state, had yard work that he could do, and that Goodnow would put him to work, and that he could always have work as long as he behaved himself. Now, it may be conceded that this last statement as to work in the future was a mere false promise, and not a false statement as to an exist-

ing fact. But the statement that Goodnow had positions at yard work at Marion, Van Horne, and Perry was not true. The plaintiff immediately returned to Marion, and presented himself to Goodnow for employment, and was told that there was no employment for him. He again applied to Goodnow for work, and received the same answer. He went home to his family, at Delta, in this state, and, after a time, wrote to Goodnow, requesting employment, and received this answer:

"Marion, Iowa, March 19, 1891.

"*J. C. O'Brien, Delta, Iowa.*

"Dear Sir:—Noting yours of the 16th instance, our business is very slack, and I have no work that I could offer you. It would be a waste of time to come here now.             Truly yours,

"C. A. Goodnow."

It ought to be stated that when Hinsey concluded his business with the plaintiff he gave him an open letter to Goodnow, of which the following is a copy:

"Chicago, Ill., Dec. 5, 1890.

"*C. A. Goodnow, Superintendent, Marion.*

"Dear Sir:—I have to day settled with the bearer, J. C. O'Brien, who was injured at Sabula Junction on September 8th last. The amount I have allowed him is very small, considering the severity of his injury, and think, in addition, that he is entitled to any courtesy that can be consistently shown him in the matter of re-employment. His hand, as you can see, will not permit him to do very hard work at first. I have not made employment a condition of settlement with him, but promised to write you, and urge that you do the best you can for him.

"Yours, truly,

"John A. Hinsey, Special Agent."

It was claimed by Hinsey that he made no representations as to the fact that places in the yards on

Goodnow's division were vacant at that time, but this statement raised no more than a conflict in the evidence.

It is also claimed, and the evidence tends to show, that the plaintiff knew the contents of this letter. But the jury found specially that, at the time this settlement occurred, the plaintiff was not in such a condition mentally "as to be able to attend to business and understand the nature and effect of the release set up by the defendant when he signed it." And it was further found specially that he did not have "full opportunity and capacity to read the contract of settlement, and know its contents, before he signed it."

It is strenuously urged that the special findings are absolutely without support in the evidence. We have carefully examined the whole record, and our conclusion is that it was a fair question for the jury to determine whether the plaintiff was at the time capable of making a valid settlement of his claim, and we do not think we should disturb the verdict on that ground.

II. Objection was made because the court allowed the plaintiff to answer the following questions: *"Question 2. Describe* your physical and mental condition when you were there, at the time you signed that paper. *Question.* Describe your nervous condition at that time. *Question.* Tell the jury what your condition was at that time, as regards your physical and mental condition. *Question.* Tell the jury again, in your own way, as fully as you can, what your mental and physical condition was at the time you transacted this business you have referred to. *Question.* What was your mental condition at that time?" It is claimed that these questions called for the opinion of the witness as to his mental condition. We do not think this position can be sustained. He was asked to describe his physical and mental and nervous condition, not to give an opinion as to what his condition was in these respects.

*2. EVIDENCE: opinions.*

III. We come now to a consideration of what we regard as the material question in the case. It is con-

**3. SETTLEMENT:** rescission on account of fraud: action without tender of benefits received.

ceded that the defendant paid to the plaintiff the sum of two hundred and ten dollars and fifty cents in money, and settled a bill for his boarding, amounting to thirty-nine dollars and fifty cents; and it is claimed by the defendant that, even if the settlement was voidable by reason of the fraud, or void because the plaintiff did not, at the time it was made, have sufficient mental capacity to make a contract, yet this action can not be maintained, because it was brought without tendering to the defendant the two hundred and fifty dollars received at the time of the settlement. It is true that no tender was made. The plaintiff commenced this action on May 14, 1891, nearly two months after he was advised by Goodnow that it would be a waste of time to go to Marion to get work. The court instructed the jury that if they found for the plaintiff they should deduct from the amount awarded to him the sum of two hundred and fifty dollars, which he had already received. The verdict returned was in the sum of three thousand, seven hundred and fifty dollars.

It is undoubtedly true that the general rule is that, whenever one has a right to rescind a contract, and exercises that right, he must restore the other party to the same condition he would have been in if the contract had not been made. The defendant claims that this release of a claim for damages comes within this rule. And it is not to be denied that there are adjudged cases which so hold. See *Brown v. Hartford Fire Insurance Co.*, 117 Mass. 479. A number of other cases are cited by counsel, prominent among which is *E. Tenn. V. & G. Railway Co. v. Hayes*, 10 S. E. Rep. (Ga.) 350. We have given these cases a careful examination, and our conclusion is that they are not applicable to a state

of facts, such as is found in this case, and that there is
another line of cases which, to our minds, announce the
better rule.   The case of *Hendrickson v. Hendrickson*, 51
Iowa, 68, is precisely in point.   It is there held that,
where a party has fraudulently procured the execution
of a contract, he is not entitled to an offer to restore
what he has received as a condition precedent to rescis-
sion.   It is claimed by counsel for the appellant that
this case is overruled by the later case of *Citizens' Bank
v. Barnes*, 70 Iowa, 412.   It is true there is language
in the opinion in the last named case which is not
entirely in accord with the former case.   But the court
expressly said that it was unnecessary to determine this
question.   The cases of *Gullher v. Chic., R. I. & P.
Railway Co.*, 59 Iowa, 416, and *Wallace v. Chic., St. P.
M. & O. Railway Co.*, 67 Iowa, 547, were much like the
case at bar.   They were actions to recover for personal
injuries, and settlements and releases were set up in
defense.   The question is not made in said cases that it
was necessary to return or tender the amount received
in settlement before commencing an action.   It is true
the question was not directly made in the pleadings in
those cases, but the right to maintain the actions was
not questioned by the court or counsel.   That the gen-
eral rule above announced has no application to an
action like this, see *Chic., R. I. & P. Railway Co. v.
Lewis*, 109 Ill. 120.   It is there held that, "if a release
of a cause of action is obtained from a person by fraud
and circumvention at a time when he is incapable of
making a contract rationally, and money is paid him at
the time of its execution, he may repudiate the release,
and bring his action without first paying or tendering
back the money received by him."   And in *Mullen v.
Old Colony Railway Co.*, 127 Mass. 86, it was held, if
a defendant obtains the signature of the plaintiff to a
paper purporting to be a settlement and discharge of
the cause of action, by fraudulent representations, it is
merely a receipt for a gratuity, and the plaintiff may

maintain his action without returning the money paid him. See, also, *Railway Co. v. Doyle,* 18 Kan. 58; *Allerton v. Allerton,* 50 N. Y. 670; *Kley v. Healy,* 28 N. E. Rep. (N. Y. App.) 593. The last two cases are to the effect, that the rule, that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good a situation as he was at the time the agreement was made is satisfied if the judgment asked for will accomplish that result, and in such case no offer to return that which was received is necessary. In the case of *Kley v. Healy* the court uses the following language: "A more satisfactory answer, however, may be found in the principle that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain, either by virtue of the contract sought to be set aside, or of the original liability." This principle commends itself as eminently just. Applying it to the facts in the case at bar, we may well inquire, why should the plaintiff tender to the defendant that which the plaintiff was entitled to retain even if defeated in the action? In that event he would retain the two hundred and fifty dollars by virtue of what the defendant contends is a valid transaction. When the court directed the jury that, if the plaintiff was entitled to recover, the sum paid at the alleged settlement should be deducted from the verdict, it was, in effect, a return of the money paid for the release.

We think there is no other question in the case which demands separate consideration. The border line of doubt we have had in this case is without the question of fraud, and the incapacity of the plaintiff to make a contract. But one feature of the case appears to us to be without doubt. That is, that the plaintiff was overreached, and taken advantage of, in the settlement. He returned from Chicago to Marion in the

belief that he would be given employment. The manner in which he was received, and the refusal to give him employment after a considerable lapse of time, and the fact that he is permanently disabled from performing most kinds of manual labor, must have had great weight in inducing the jury to reach the conclusion that he was unfairly dealt with.    AFFIRMED.