PETER A. REED, Respondent, v. JOHN GILL & SONS COMPANY, Appellant.

Kansas City Court of Appeals, May 5, 1919.

1. **NEGLIGENCE: Release: Fraud: Tender.** In an action for damages for personal injuries the defendant pleaded a release which plaintiff in his reply alleged was procured by fraud. The consideration for the release was paid by an insurance company, although it recited that the consideration was paid by the defendant and it recited that the defendant thereby was discharged from liability. There was no evidence of the relation between the defendant and the insurance company. *Held*, defendant by it answer adopted the release and if the plaintiff desired to disown because of fraud it was his duty to tender the consideration after he became aware of the fact that defendant had adopted the release.

2. **TENDER: Sufficiency.** In a law case it is not sufficient that an offer of the money was made in the pleading.

3. ———: **Time.** A tender made six months or more after the institution of the suit will not avail.

4. ———: **Parties.** Though a release could not be set aside as to an insurance company not a party to the suit because it had an additional pecuniary interest the plaintiff is not excused from tendering the consideration before suit, and, until he has, the defendant may assert that plaintiff is in no position to disavow the release.

Appeal from Cole Circuit Court.—*Hon. John G. Slate,* Judge.

REVERSED.

*J. J. O'Connor* and *Glendy B. Arnold* for respondent.

*A. E. L. Gardner* and *A. T. Dumm* for appellant.

BLAND, J.—Plaintiff brought this suit alleging in his petition that while working upon the new State

Capitol at Jefferson City, Missouri, and in the employ of the defendant, he was injured by the carelessness and negligence of defendant's servants and employees.

The answer among other things alleges that after plaintiff's injury he executed to defendant for a consideration of $452.45, which was paid to plaintiff, a full release or acquittance from the cause of action set out in his petition. In his reply plaintiff alleges that said release was procured through fraud. The reply further states that the consideration for the release was paid by the Aetna Insurance Company and not by the defendant, but whether the same was paid for the account of the defendant plaintiff had no knowledge, and "in taking said release and paying the consideration therefor, said insurance company was acting under under and by virtue of some contract between it and the defendant, the terms of which are unknown to plaintiff." Plaintiff further states that acting upon the belief that defendant was entitled to the consideration for the release, plaintiff's counsel offered to tender the defendant such consideration with interest but defendant failed and refused to accept the same and that any tender to defendant before the institution of the action would have been an "idle and useless ceremony."

There was a verdict and judgment in favor of the plaintiff in the sum of four thousand and seventy-five dollars ($4075) and defendant has appealed.

There is no evidence whatever that plaintiff tendered to anyone at any time the consideration for the release. While the release itself recites that the consideration was paid by the defendant, there is no evidence that it was so paid but defendant itself proved that the consideration was paid by the Aetna Ins. Co. The release recites that it discharges defendant from liability. There is no evidence whatever of the relationship between the Aetna Ins. Co. and the defendant. The agent of the Aetna Ins. Co., who negotiated and settled the case, stated that he had charge of the lia-

bility department of the insurance company, but whether the defendant had liability insurance with the insurance company is not shown.

The case was tried and submitted to the jury by plaintiff on the theory that the release discharged defendant unless it was procured by fraud. The pleadings, evidence and the theory upon which this case was tried, presents a situation where the Aetna Insurance Company acted in a capacity of something more than a mere volunteer or stranger for the reason that plaintiff in his reply stated that the insurance company was acting under and by virtue of some contract between it and the defendant, the terms of which were unknown to plaintiff. But assuming that the insurance company was acting only as a volunteer or stranger to plaintiff and defendant, nevertheless, plaintiff and defendant are bound by the terms of said release for the reason that the contract was made for the benefit of the defendant, and in its answer defendant adopts said release. By such adoption, in contemplation of the law, it made the release its own (Howsmon v. Trenton Water Co., 119 Mo. 304; City of St. Louis v. Von Puhl, 133 Mo. 561; St. Louis v. Wright Construction Co., 202 Mo. 451), and after the contract or release was adopted by the defendant it could not be. rescinded by the plaintiff and the insurance company. [Davis v. Calloway, 30 Ind. 112; Ransdel v. Moore, 153 Ind. 393; Gilbert v. Sanderson, 56 Iowa, 349.]

As the release was made for the benefit of the defendant and the latter adopted it as its own by the allegations contained in its answer, and as plaintiff and the insurance company could not thereafter rescind the release, the defendant after having adopted the release was in a position to insist upon its terms and is entitled to all of the benefits growing out of it. If the release was not procured by fraud then it was binding upon plaintiff and could be used as effectually by defendant in any suit attempted to be prosecuted by plaintiff as if the release had been originally negotiated and executed by and between plaintiff and defendant.

This being a fact, it seems apparent to us that if plaintiff desired to rescind the release on account of fraud it was his duty to tender to this defendant, after he had become aware of the fact that defendant had adopted the release, the consideration paid therefor. Plaintiff not having tendered the consideration of the release within a reasonable time or, in fact, at all, but having gone to trial without making any tender or showing that a tender was useless because if made it would have been refused, after he knew that this defendant was the one to whom tender was to be made, is not entitled to a rescission of the release but, by his conduct, has ratified the release including the fraud. [Long v. International Vending Machine Co., 158 Mo. App. 662; Taylor v. Short, 107 Mo. 384; Althoff v. St. Louis Transit Co., 204 Mo. 166; Moss v. King, 212 Mo. 587; Robinson v. Siple, 129 Mo. 208; Buyer v. Milan, 199 S. W. 712.]

This is a law case and it is not sufficient that an offer of the money be made in the pleadings. [Hancock v. Blackwell, 139 Mo. 1. c. 453; Whelan v. Reilly, 61 Mo. 1. c. 569.]

The judgment is reversed. All concur.

## ON REHEARING.

TRIMBLE, J.—A rehearing and reconsideration of this cause makes us less disposed than ever to change the result reached in the original opinion.

The fraud charged in obtaining the settlement is that Dr. Enloe, who attended plaintiff upon and for a time after his injury, thereby secured plaintiff's confidence in his skill and learning as a surgeon and in his integrity as a man, and knowingly and falsely stated to the plaintiff that his injuries were not permanent and that he would shortly recover from his then weakened condition, and that plaintiff relying upon such statements and believing them to be true, executed the release. The reply charges that Dr. Enloe did this, "being anxious of having his bill for medical services to plaintiff satisfied and of aiding said insurance com-

pany to bring about in their behalf a highly beneficial settlement and compromise of plaintiff's said causes of action, and acting in the interests of said insurance company and the defendant.'' Plaintiff was hurt on June 22, 1916, and was treated for a time at Jefferson City, but left there for St. Louis. The settlement was executed September 12, 1916, and was made up of items agreed upon in correspondence between plaintiff's then attorney, Mr. Cook, who, upon taking up the question of damages with the defendant, learned that the Aetna Insurance Company ''were the insurers'' and thereupon entered into negotiations with the Insurance Company. The statements charged to have been made by Dr. Enloe—which the latter denies as do all the others, except plaintiff, at the time the release was executed and when the statements are claimed to have been made—took place at the Aetna Insurance Company's place of business in St. Louis, where plaintiff and the doctor met for the first time in six weeks after the doctor had last seen plaintiff, and no examination of the plaintiff was then made. Plaintiff was in full possession of his senses, knew he was executing a release for all injuries and their results, and knew that he was not well at the time and had not yet recovered. Plaintiff's condition was not the result of some other injury of which he was ignorant but of which the doctor knew, and concealed from him, but arose simply from the fact that he did not, or has not yet, fully recovered from the injuries known to have been received. The evidence did not disclose any agency existing between Dr. Enloe and the defendant or the insurance company. Indeed, the only affirmative evidence as to why Dr. Enloe met plaintiff in St. Louis and was present at the settlement was that he did so in response to a request from Mr. Cook who could not be present, and that the doctor went to St. Louis primarily to take a patient to the hospital there. The charge that the doctor was acting as the agent for either the defendant or the insurance company rests rather upon *suspicion* than upon any well defined evidence to support it. While the

claim is that Dr. Enloe was the defendant's surgeon in the erection of the Capitol, the proof went no further than to show that when an injury occurred there if the Doctor was the first physician on the ground he got the case, and, in this case at least, charged the patient for his services. The statements claimed to have been made were in reference to plaintiff's present condition and the probable outcome thereof in the future. As to his present condition, plaintiff knew better about that, and as to how he felt, than could any physician who had not seen him for six weeks and who had made no examination. So that, it appears to the writer that there is exceedingly slight ground for the setting aside of the formal settlement knowingly entered into after lengthy negotiations concerning the items constituting the same. [Anderson v. Meyer Bros. Drug Co., 149 Mo. App. 554, 573-575; Crim v. Crim, 162 Mo. 544, 552; Thompson v. Kansas City, etc., R. Co., 142 Mo. 234; Carroll v. United Railway Co., 157 Mo. App. 247, 267; Homuth v. Metropolitan St. Ry., 129 Mo. 629, 643; Lomax v. Southwest Missouri, etc., R. Co., 119 Mo. App. 192, 198; Nelson v. Minneapolis St. R. Co., 61 Minn. 167; Atchison, T. & S. F. R. Co. v. Bennett, 66 Pac. 1018; Bispham's Equity, sec. 215; 2 Pom. Eq. Jur. (3 Ed.), sec. 890, 894.]

But aside from and waiving all this, there is another reason which disposes of plaintiff's right to recover in this case, and that is he did not put himself in a position to disavow the settlement by returning, or offering to return, the fruits of the settlement before instituting the suit. The general rule is that, in cases where the plaintiff has executed a release knowing that it is such, he must, in order to be in a position to maintain his suit, tender the money received on the settlement before the suit is instituted. [Carroll v. United Railways Co., 157 Mo. App. 247, 293; Kingman v. Ellis, 125 Mo. App. 692; Boehm v. American Patriots, 172 Mo. App. 104; Althoff v. St. Louis Transit Co., 204 Mo. 166; Reid v. St. Louis, etc., R. Co., 187 S. W.

15; Putnam v. Boyer, 173 Mo. App. 394, 398; Loveless v. Cunard Mining Co., 201 S. W. 375.]

The plaintiff did not before bringing the suit make a tender to anyone, either to the Insurance Company or to the defendant. By a supplemental abstract filed after the original opinion was handed down, and at the time the motion for rehearing was filed, it appears that one of plaintiff's counsel sought out the defendant's president and informed him he had come, representing the plaintiff, to make a tender of the amount received on the release, and reached in his pocket to get the money, but upon the president replying either "I will not take it" or "I can't take it" he does not know which, the attorney bade him goodbye and left. This, however, was long after the institution of the suit—some six months or more—and the authorities all hold that this will not do, nor will the fact that the tender was refused after suit was brought be evidence that the tender would have been unavailing had it been made before the institution of suit. We mention this supplemental abstract to show that we have considered it as we think we have a right to do on this hearing under the recent decision of the Supreme Court in the case of Starr v. Penfield, 205 S. W. 541.

The fact that in this case the Insurance Company paid the money does not relieve the plaintiff of the necessity of placing himself in a situation to claim a rescission by making a tender. The plaintiff contends that as he did not know the exact terms of the contract or relationship existing between the defendant and the insurance company, he did not know whom to tender the money to. He could at least have tendered it to the one from whom he received it. In case it was refused he could then have tendered it to the defendant or deposited it in court, and in that event he would not have been in the position of holding on to the benefits of the settlement and at the same time disavowing its effect. But he made no prior tender to any one, nor did he make any attempt to ascertain to whom he should tender the money before bringing suit.

It seems to us that even though the consideration for the release was paid by the Insurance Company, yet the plaintiff must be held to have known that the Insurance Company was acting for and in behalf of the defendant, even if it may be deemed to have been also acting for itself. The release recites that the consideration thereof was paid by defendant, and it was the cause of action against the defendant that was released.

The case should be disposed of the same as if the defendant itself had obtained and paid for the release. Only by giving up the advantages of the release, or offering to do so, could the plaintiff place himself in a position to say it was rescinded, and thus avoid its effect. The fact that the Insurance Company had an additional interest, peculiar to itself, in upholding the release, and therefore the release could not be set aside *as to it* in a suit to which it was not a party, ought not to change the rule as to the necessity of a tender prior to the bringing of suit. The release was clearly for the benefit of the defendant, even if it was also in the interest of the Insurance Company; and hence the former is entitled to claim the benefit of its advantages and to assert that the plaintiff is not in a position to disavow it, as much as the Insurance Company.

We think that to avoid complications, the case, as to the necessity for prior tender, should be regarded as solely between plaintiff and defendant, as it is, and without regard to any other party not a party to the suit nor bound by any judgment rendered with reference to the release. For, if it can be said that as the Insurance Company has an additional interest peculiar to itself in upholding the release, and since it is not a party to the suit, therefore the release can be neither set aside herein nor treated as a bar to recovery, and consequently no tender is necessary to avoid its effect, then it would seem to follow that section 1812, Revised Statutes 1909, would not apply to the circumstances of this case. If that be so, then plaintiff should have followed the procedure in effect before the

statute was passed, and brought a suit in equity to re-
scind and cancel the release. We do not think that,
in disposing of the case between the plaintiff and de-
fendant the rights of the Insurance Company should be
regarded or taken into consideration; but the case
should be disposed of in the same manner, and accord-
ing to the same principles, as if no one other than
the plaintiff and defendant had anything to do with the
release.

The judgment is reversed. All concur.