[S. F. No. 11952. Department One.—June 14, 1928.]

HARRY O'MEARA, Respondent, v. G. P. HAIDEN et al., Defendants; G. P. HAIDEN, Appellant.

John Ralph Wilson for Appellant.

Ford, Johnson & Bourquin and Philip M. Carey for Respondent.

CURTIS, J.—Action for damages for death of plaintiff's son from injuries sustained by reason of the negligent operation of an automobile by appellant.

On the 14th of September, 1922, Herbert O'Meara, plaintiff's son, then the age of seven years, while running across East 12th Street in the city of Oakland, was struck by an automobile driven by defendant B. Henderson, the agent of the defendant, G. P. Haiden. As a result of his injuries he remained in bed two weeks. He returned to school in November and attended irregularly for some five months. On November 1, 1922, the plaintiff in consideration of the sum of $250 paid to him by defendant Haiden executed and delivered to said defendant the following release:

"1847 SF–Auto–19580–B

"G. P. Haiden,

"Herbert O'Meara—age 7.

"In consideration of the payment of two hundred fifty no/100 dollars to me in hand paid by G. P. Haiden I do hereby release and forever discharge said G. P. Haiden from any and all actions, causes of actions, claims and demands for, upon or by reason of any damage, loss or injury which heretofore have been or which hereafter may be sustained by me in consequence of an automobile accident, which occurred at Seventh avenue and East Twelfth street, Oakland, California, on or about the 14th day of September, 1922, in which my minor son, Herbert was injured.

"It being further agreed and understood that the payment of the said two hundred and fifty and no/100 dollars is not to be construed as an admission on the part of said G. P. Haiden of any liability whatever in consequence of said accident.

"In further consideration of the amount above stated I do hereby bind myself, my heirs, executors and administrators to indemnify and hold harmless the said G. P. Haiden from any loss the said G. P. Haiden may be obliged to pay in the future in reference to the above mentioned accident.

"In witness whereof, I have hereunto set my hand this 1st day of November, 1922.

"H. O'MEARA.

"Signed and sealed in the presence of

"MRS. H. O. O'MEARA,

"J. A. STEWART."

Thereafter and on the eighth day of April, 1923, the boy was again taken sick. Doctor Nichols, who attended him on this occasion, as well as at the time he was first injured, pronounced his recent ailment as measles. He died on the thirteenth day of the same month.

Upon the death of his son the plaintiff brought this action for damages under section 376 of the Code of Civil Procedure, the amended complaint therein having been filed July 23, 1923. On September 7 following defendant Haiden filed his answer to the complaint setting up the foregoing release. On October 15, 1923, plaintiff served upon defendant Haiden a notice of rescission of said release, and tendered to said defendant the sum of $250 paid by defendant to plaintiff at the time of the execution of said release, which tender was refused by defendant.

The action came on for trial on January 22d following, and a verdict was rendered in favor of plaintiff for the sum of $10,250. From this judgment the defendant Haiden has appealed. It may be conceded that plaintiff's son received his injuries through the negligence of defendant and that said injuries were the proximate cause of his death. The court so found, and there was ample evidence to sustain this finding. The principal contentions of appellant on this appeal are, first, that the release was a complete defense to this action, that it was binding upon plaintiff and could not be rescinded and, second, that if the release could be rescinded, the action was prematurely brought, as it was instituted almost three months prior to any attempted rescission.

It is conceded that at the time of the payment of the sum of $250 to plaintiff and the execution of said release, neither party thereto had in mind that the boy would die. The appellant testified that "At the time this release was obtained I did not have in mind that the boy was likely to die. The fact that the boy might die from his injuries was not in contemplation at all at the time the release was executed." The evidence shows that the cause of the boy's death was abscess of the spleen, and the physician testified that this abscess was in his opinion caused from a bruise over the abdomen producing a possible hemorrhage in the spleen which was not visible to the naked eye. He further explained how death resulted from a complication of the

bruised condition of the spleen and the infection of measles. Under these circumstances are the parties bound by the release in this action brought to recover damages for the injury fatal in its nature and effect when, at the time of its execution, neither of them had knowledge of such an injury, and neither of them contracted with such an injury in mind?

Section 1542 of the Civil Code provides that "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known to him must have materially affected his settlement with the debtor." This court in considering the extent to which a general release is binding upon the parties thereto has said in *Meyer* v. *Haas*, 126 Cal. 560, 663 [58 Pac. 1042, 1043]: "That portion of the contract, therefore, purporting to release and satisfy the claim upon which the action is based is, on the findings of the jury, absolutely void for the reason that the mind of plaintiff never consented to any such a release. . . . " In that action the plaintiff, who had suffered injuries due to the negligence of the defendant, claimed, and the jury found, that the release given by the plaintiff was only in satisfaction of his claim for loss of time, although it purported on its face to be a release in full of all damages sustained as a result of said injuries. It is true that it was alleged and proven that said release had been procured by the fraud of the defendant therein; but this court has further held that a mutual mistake of fact concurred in by the parties invalidates a release (*Miller* v. *Brode*, 186 Cal. 409 [199 Pac. 531]). In the case of *Richardson* v. *Chicago etc. Ry. Co.*, 157 Minn. 474 [196 N. W. 643], cited by appellant, the correct rule appears to be stated. In that action the court said: "Where the consideration received for a release is intended as compensation for the injuries sustained, and it subsequently develops that a substantial injury existed which was not known to the parties when the settlement was made and consequently was not taken into account in making it, the release may be avoided on the ground of mutual mistake." This language is peculiarly applicable to the facts in this case. The evidence shows that the injury was sustained on September 14, 1922, and that as a result thereof the boy was sent to the hospital, from which he returned

about two weeks thereafter. The doctor who attended the injured boy testified: "My first call was made on September 14, 1922, upon an automobile accident; he had muscular bruises over his right leg and arm and bruises over his abdomen; if I recall correctly I think there were small cuts which probably would be termed as bruises. I saw him on the 14th and 16th, and 19th, and the 30th of September and on the 4th of October; about the 4th of October so far as the bruises were concerned he seemed to be recovered, and from the immediate accident, so far as I could determine." The boy was in this condition on November 1, 1922, when the release was executed. It was not until the following March or April that his condition again became serious. Continuing, the doctor testified: "On the 29th day of November I examined him; there were no notes made relative to that; that was an office visit; the boy did not recuperate as rapidly as—to make a statement, I never saw the boy before the 14th of September, 1922. He didn't seem to be recuperating as rapidly as he might have done; he didn't seem to be up to par, to be normal at these dates; he was pale; he was anaemic; he was nervous. I saw him again on the 2d of March, I saw him again on the 8th day of April, 1923, at his home; I recall it was on a Sunday night along in the evening; he had the measles; I saw him on the following morning on the 9th, that was a call at home; I didn't see him any more until the 12th; upon that day his condition was critical." As already stated, the boy died on April 13, 1923. From this testimony of the doctor who attended the boy it appears that he did not visit or see the boy after the 4th of October, 1922, until the twenty-ninth day of November, 1922, and as stated by him, "about the 4th day of October so far as the bruises were concerned he seemed to be recovered, and from the immediate accident, so far as I could determine." It was during this time when the boy "seemed to be recovered from the immediate accident" that the parties entered into negotiations which resulted in the execution and delivery of the release. ▆ The evidence, as before observed, shows that at the time of its execution neither party had in mind the possibility that the boy might die or that he had sustained any more than superficial wounds or bruises by reason of the accident. It is quite evident that the settlement made by the defendant and the

delivery and acceptance of the release was simply for the injuries sustained by the boy, and which were then known to the parties, and from which, from the testimony of the doctor, the boy had recovered.

A further distinction is made in the case of *Richardson* v. *Chicago etc. Ry. Co.*, *supra*, between the injury sustained and the effects or results from such injury. If the injury is known at the time of the settlement, the release is binding upon the parties, even if unknown or unexpected consequences result therefrom, but if the injury is unknown, and the parties purport to settle for all injuries sustained, then the release will not be held to be binding upon the parties as to the injury which was unknown to the parties at the time of executing the release. "To avoid such a release, the rule requires clear and convincing proof that a substantial injury, which was not discovered until after the settlement, had in fact been sustained in the accident and existed at the time of the settlement. That unknown and unexpected consequences resulted from known injuries is not sufficient." (*Richardson* v. *Chicago etc. Ry. Co.*, *supra*.) The testimony of Doctor Nichols is that the boy died from an injury to his spleen received at the time he was run over by the defendant's automobile, and that such injury was not visible to the naked eye. The only conclusion to be drawn from his testimony as recited in this opinion is that he did not know of the injury to the boy's spleen at the time he ceased his visits to the boy on October 4, 1922; that his first knowledge that the boy had sustained any such injury was after the boy had come down with the measles, which was the following April, and which was long after the execution of the release. It is not contended nor is there any showing that the plaintiff had any knowledge of this injury except as he was informed thereof by the doctor. It appears, therefore, beyond question, that at the date of the release the injury which was the cause of the boy's death was not known to either party. It was not in the minds of the parties at the time of the settlement which resulted in the execution of this written release. Accordingly, although the release may purport upon its face to extend to the plaintiff's claim for damages arising from the death of his son, yet in reality it does not do so (sec. 1542, Civ. Code). It is unreasonable to suppose that plaintiff

would have entered into said agreement of settlement whereby he released the defendant of all damage for the sum of $250 had he known that there was any possibility that the boy had received this fatal injury to his spleen. Such knowledge would have materially affected his settlement with defendant. To hold him to the terms of the release would not only be manifestly unfair and unjust, but it would be against the law of this state as we understand the same and as we have attempted to state it in the foregoing pages of this opinion.

 It is next contended by appellant that the action was prematurely brought for the reason that no rescission of said release was made or was attempted to be made by the plaintiff until some three months after the institution of this action. In *Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 Pac. 708], the plaintiff sought to recover damages for personal injuries sustained through the negligence of defendant. The defendant pleaded a release in full of all said damages. The plaintiff showed upon the trial that said release had been procured by fraud. He had not, however, prior to the trial attempted to rescind his contract of release, nor had he restored the consideration received by him from the defendant. This court held that rescission and restoration of consideration were necessary before plaintiff could recover, and reversed a judgment in favor of the plaintiff. In *Meyer* v. *Haas*, 126 Cal. 560 [58 Pac. 1042], which was also an action to recover damages for personal injuries, the defendant relied upon a release and written discharge executed and delivered to him by the plaintiff. The plaintiff claimed that he understood that the release given by him was simply of his claim for loss of time and was not intended as a release in full of all damages sustained. No rescission was ever made by the plaintiff nor did he restore the consideration received. In holding that plaintiff was not required to make such rescission or restore said consideration this court said:

"It will be seen from these special findings of the jury, considered in connection with their general verdict, that the jury were of the opinion that plaintiff executed the alleged release under a mistake as to its contents, that he believed he was receiving the twenty-five dollars and giving the receipt in discharge of any claim he might have for loss

of time merely, and that he was led into this error by the artifice and deception of Kurtz as to the contents of the instrument, Kurtz acting as the agent of defendants and being in their employ, and at the same time pretending to act for plaintiff. The case is not without evidence to support such conclusions. That portion of the contract, therefore, purporting to release and satisfy the claim upon which the action is based is, on the findings of the jury, absolutely void for the reason that the mind of plaintiff never consented to any such a release, and the plaintiff should be bound only to the release and satisfaction of his claim for loss of time. This view of the case makes it clearly distinguishable from most of the cases cited by appellant. In those cases generally the parties sought to avoid or rescind contracts, the nature and contents of which they understood correctly, but they had been led to execute them by fraud or deception as to something other than the contents of the contract; and in such a case the contract would not be void, but only voidable, and the rule requiring a return of everything received on the faith of the contract before it could be rescinded or avoided would apply; but this rule as to a return of everything received does not apply where a party is tricked or deceived into signing a contract different in its terms and objects from the contract which he has made and which he understands that he is executing. The contract under such circumstances will be held to be what the maker of it intended it should be, and not what it was made to appear to be by the deception practiced. The twenty-five dollars paid plaintiff may, therefore, properly be said to have been received in payment for the loss of time during his illness, and not in satisfaction of anything that his mind never consented that it should satisfy. The claim sued upon does not include this loss of time, and the court instructed the jury that they could find nothing against defendants for loss of time. No offer to return the money was necessary, for the reason that the plaintiff in this case 'is not attempting to avoid a contract which he has made, but is showing that he did not make the contract which he apparently made.' (*Mullen* v. *Old Colony R. R.*, 127 Mass. 86 [34 Am. Rep. 349]; *Chicago etc. Ry. Co.* v. *Lewis*, 109 Ill. 120; *Senter* v. *Senter*, 70 Cal. 619 [11 Pac. 782]; *Wilson*

v. *Moriarty*, 77 Cal. 596 [20 Pac. 134] ; 88 Cal. 207 [26 Pac. 85] ; *Sullivan* v. *Moorhead*, 99 Cal. 157 [33 Pac. 796].) "

The present action in principle is much like the case of *Meyer* v. *Haas*, except that no fraud is claimed or proven to have been practiced by the defendant in the procurement of the release involved herein. In this action, however, the uncontradicted evidence, as we have already seen, shows that neither party to the release at the time they made the settlement evidenced by the release had in mind the injury which resulted in the boy's death. As to the ,damages sustained by the father for the death of his son due to defendant's negligence we have held that the release did not cover any damages sustained by reason of the boy's death. It only extended to damages for those injuries known to the parties at the time of executing it. The present action was by the instructions of the trial court limited to such damages as the father may have sustained by reason of his son's death. As plaintiff herein has not recovered any damages sustained by him for injuries, which were covered by the release, it was not necessary for him to rescind said release and restore the consideration received therefor before the institution of this action. (*Lumley* v. *Wabash R. Co.*, 76 Fed. 66; *McGill* v. *Louisville & N. R. R. Co.*, 114 Ky. 358 [70 S. W. 1048] ; *Bliss* v. *New York etc. R. R. Co.*, 160 Mass. 447 [39 Am. St. Rep. 504, 36 N. E. 65].) This we understand to be the effect of the holding of this court in *Meyer* v. *Haas, supra*. In that action, however, the plaintiff did not either after or before the commencement thereof offer to rescind and restore the consideration received by him from the defendant Haas. In the present action after the commencement thereof and before the trial the plaintiff herein offered in writing to rescind and tendered the defendant the $250 received at the time of executing the release, which the defendant refused to accept. There is creditable authority to sustain plaintiff's contention that the rescission, assuming that a rescission was required, attempted to be made by plaintiff herein after suit began was timely, and was sufficient to entitle plaintiff to litigate the validity of the general release at the trial of the action. "Undoubtedly no duty exists to return the consideration until the fraud or other invalidity is discovered. Beyond this the authorities are in conflict as to when the restoration of consideration or tender

thereof must be made. Some cases, in many of which cancellation of the release is asked in the complaint or statement of claim, decide that such return or tender must be made before the releasor institutes suit on the cause of action reléased. Other decisions take the view that a credit on the verdict is sufficient, and hence no actual tender is apparently required at any time. Furthermore, authority is not lacking for the statement that restoration or tender at any time during the pendency of the suit is early enough. But the clearest and soundest rule is that no restoration or tender need be made until an attack is made on the release. Such attack generally occurs when the ground of invalidity, as fraud, is replied in avoidance to a plea of the release to the original right.'' (34 Cyc. 1072.) In *Rockwell* v. *Capital Traction Co.*, 25 App. D. C. 98 [4 Ann. Cas. 648], the following rule is enunciated: ''We see no good reason why one party more than the other should be required to anticipate a defense founded on the instrument (a release), and offer to restore the consideration as the condition of bringing the action. We are of the opinion that it is time enough to make the tender in either case after the release shall have been pleaded in bar. Tender or offer to return accomplishes all the purposes for which it is required. . . . Some of the cases to which our attention has been called, where the doctrine has been declared that tender or offer to return is a condition precedent to the institution of the suit, were either suits to rescind, or suits in courts of blended jurisdiction where cancellation was part of the remedy sought. (Citing cases.) . . . On the other hand, many cases, some of which are cited, expressly decide that the offer to return may be made after the institution of the suit and while it is pending. (*O'Brien* v. *Chicago etc. R. Co.*, 89 Iowa, 644 [57 N. W. 425]; *Chicago etc. R. Co.* v. *Doyle*, 18 Kan. 58.)'' There are cases to the contrary and some of those cited by defendant in his brief belong to that class, but in most of those cases we find simply general language purporting to uphold defendant's contention. And upon examination of these cases we find that the real point that we are here considering was not involved in any of said actions. Among the cases cited by defendant in support of his contention that rescission and restoration of consideration must precede the institution of the action are

the following: *Reed* v. *John Gill & Sons Co.*, 201 Mo. App. 457 [212 S. W. 43] , *Reid* v. *St. Louis & S. F. R. Co.* (Mo.), 187 S. W. 15, *Althoff* v. *St. Louis Transit Co.*, 204 Mo. 166 [102 S. W. 642], *McCoy* v. *James T. McMahon Const. Co.* (Mo.), 216 S. W. 770, and *Randall* v. *Port Huron etc. Co.*, 215 Mich. 413 [184 N. W. 435]. In none of these cases, however, did the plaintiff, as the plaintiff did in this case, tender back and offer to restore the consideration before the trial. In *Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 Pac. 708], relied upon by defendant, the plaintiff therein made no offer to rescind the release either before or after the institution of the action. The court held he could not recover for that reason and reversed the judgment in his favor. We think the true rule is that when the purpose of the action is to cancel or set aside a contract on the ground of fraud, mistake, or other reason, then it is necessary for the plaintiff therein to rescind said contract and tender back the consideration received prior to the commencement of the action, or else he will be precluded from recovery, but where plaintiff seeks to recover unliquidated damages for an injury sustained and the defendant relies upon a release as a defense to said action, the plaintiff is not precluded from showing the invalidity of said release, if he has made a timely offer to rescind the same and restore the consideration, even if said offer is made after the commencement of the action. In the present action, immediately upon the service of defendant's answer upon plaintiff, in which the defendant set up said release as a defense to plaintiff's action, the latter served upon defendant his written rescission of said release and a tender of said sum of $250, being the consideration received from defendant on execution and delivery of said release. It does not appear that plaintiff's attorneys knew of the execution of said release, prior to the time they were served with a copy of defendant's answer, nor does it appear that plaintiff himself had any real understanding of its legal effect before the matter had been brought to his attention by his attorneys after they had been served with said answer. The court found under these facts and circumstances that the plaintiff had acted with due promptness in rescinding the release and tendering back the consideration received thereunder. Under the au-

thorities cited above we believe said finding was fully justified.

While the mother of the boy was on the stand she was shown and asked to identify a photograph of her deceased son. This was objected to by the defendant, but the court overruled the objection. Upon her testimony that the photograph shown her was that of her son it was admitted in evidence. There was no dispute as to the identity of the boy injured. Just what was the purpose of offering in evidence his photograph is not apparent from the record, unless it was to unduly prejudice the jury in favor of the plaintiff. The reporter's transcript shows that the mother wept as she identified her son's picture. The effect of such procedure cannot aid in the rendition of a just and fair verdict by the jury, which should be the purpose of all trials by jury. To permit the introduction of the dead boy's photograph under the circumstances shown in this action was undoubtedly error and in a closely contested case would result in serious prejudice to the cause of the defendant, and would, therefore, call for a reversal of the judgment. We are not prepared to say that it had that effect in this proceeding. There was little question but that the boy's death was due to the negligence of defendant's servant who was operating defendant's machine at the time of the boy's injury. The main questions involved in the case were of a legal character and have already been considered by us. The objectionable testimony just referred to had no bearing upon any of them. There is, however, one phase of the case upon which such testimony might have had a material bearing, and that is embraced in the further contention of defendant that the verdict was excessive. The verdict was for $10,250, the $250 evidently being paid to cover the amount paid out by the plaintiff for the funeral expenses of his son. The complaint alleges that this amount was expended for that purpose. This leaves a verdict of $10,000 for general damages due to the death of the son. In the case of *Wiezorek* v. *Ferris*, 176 Cal. 353 [167 Pac. 234], this court reversed a judgment in that amount in favor of a parent for the death of his minor son, his only child, a boy six and one-half years of age, solely upon the ground that the amount thereof was excessive. Were we to follow that case we would be compelled to grant a reversal of the judg-

ment herein. That case was decided in October, 1917, almost eleven years ago. Since the decision thereof radical changes have taken place in social conditions, and particularly in conditions affecting the costs of living. Courts have recognized this fact in passing upon the size of verdicts and have almost invariably made allowances therefor (*Martin* v. *Pacific Gas & Elec. Co.* (Cal. App.), 255 Pac. 284; *Bowes* v. *Public Service Ry. Co.*, 94 N. J. L. 378 [110 Atl. 699]; *Quinn* v. *Chicago, M. & St. P. Ry. Co.*, 162 Minn. 87 [46 A. L. R. 1228, 202 N. W. 275]). In the last one of these cases the supreme court of Minnesota said: "In recent years there has been a noticeable increase in the size of the verdicts in personal injury cases. The courts approve of verdicts to-day which would have been unhesitatingly set aside as excessive 10 or 15 years ago. Measured in money, the earning capacity of most men has increased; measured by its purchasing power, the value of a dollar has decreased. No immediate change in the situation is in sight. It is only right that these well-known facts should be taken into consideration." In the case of *Bowes* v. *Public Service Ry. Co., supra,* decided in 1920, the supreme court of New Jersey expressed similar views in which it further said: "At a period when the purchasing power of the dollar has in the language of the day been 'cut in half,' the value of the sum awarded her is not to be estimated in the numerical *quantum* of recompense, but in its comparative ability to furnish the necessities of life."

In view of the changed conditions that now prevail from those existing some ten years ago, we do not feel that we would be justified in following at this time the views expressed by this court in *Wiezorek* v. *Ferris, supra,* regarding the subject of excessive verdicts. Under the present conditions that case cannot be accepted as a final authority in determining whether the verdict in the present action is excessive or not. On the other hand, the present verdict must be considered under the conditions prevailing at the present time, or at least at the time it was rendered in January, 1925. We must, as courts in other jurisdictions have done in passing upon similar questions as that involved herein, take judicial notice of the fact that the value of the dollar has materially changed from what it was some 10 to

15 years ago. Whether it is "cut in half" as intimated by the excerpt from one of the above-mentioned authorities, or not, it is universally admitted that it has materially decreased in value from what it was a few years ago. There has been a corresponding increase in wages and salaries as well as in the cost of living in all walks of life. The sum of $10,000 dollars when measured by its present purchasing power is far less than what it formerly was. A verdict, therefore, in this amount for personal injuries may well be sustained by the courts of to-day, when formerly it would have been their duty to set it aside as excessive. Before the advent of the present-day conditions verdicts for the death of a child amounting to $5,000 or more were frequently rendered by juries, and sustained by the courts. One of such cases was decided by the district court of appeal in 1910 and a petition to hear the same was denied by this court. The verdict was for $5,000, and in sustaining the same Mr. Justice Hart, speaking for the court, said: "the jury were authorized, as the court properly instructed them, to consider and take into account, as an element affecting the pecuniary value of the service of deceased to the plaintiff, the fact that plaintiff has, by his death, been deprived of the comfort, society and protection of her son. . . . And, obviously, this element of loss of society, comfort, and protection of the son to be reckoned in determining the pecuniary value of the service of the deceased to his mother is difficult to measure in mere dollars and cents, and manifestly must, with the whole question of damages, be left to the good sense and sound discretion of the jury to be exercised in the light of all the circumstances of the case." (*Clark* v. *Tulare Lake Dredging Co.*, 14 Cal. App. 414, 434 [112 Pac. 564, 572].) If, then, this court looked with approval upon a verdict in an amount of $5,000 in an action for the recovery of damages for the death of a child under former conditions we can have no reasonable or legal grounds now for withholding such approval of the verdict in the present action. Taking all things into consideration we are of the opinion that this verdict is not excessive. The erroneous admission of the boy's photograph in the manner already described did not then, in our opinion, have the effect of influencing the jury to render an improper

verdict against defendant, and the error in admitting it was not prejudicial to the defendant.

In one of the instructions given by the court the jury were told that if the consent of plaintiff was given to the release in question "by mistake or obtained through fraud" then it was the legal right of plaintiff to rescind the same. As we have said above, there was no claim that the release was procured by fraud and the case was tried upon the theory of mistake only. The only reference to fraud throughout the record is in this instruction. Just how the court happened to mention in said instruction "fraud" as one of the grounds of avoiding the release is in no way explained. It may have been inadvertently done. In any event, we are not convinced that defendant was seriously prejudiced by this one reference to fraud, when the record shows plainly that plaintiff made no claim that the release was fraudulently obtained, and the sole contention of plaintiff throughout the trial was that the release was of no binding effect upon him by reason of the fact that it was executed under a mutual mistake of the parties. In our opinion the judgment should be affirmed and it is so ordered.

Preston, J., concurred.

SEAWELL, J., Concurring.—I concur in the conclusion announced by the main opinion. I do not concur in the portion thereof which holds that the admission of a photograph taken of the minor two weeks before he received the fatal injuries was error. It would certainly have been proper to have shown the physical condition and mental precocity of the youth by oral testimony as matters pertinent for the consideration of the jury in determining the extent of damages sustained by the parents. A photograph, the integrity of which could not be doubted, would, in my opinion, have given the jury a truer conception of the youth's physical appearance than could have been conveyed to the jury by the descriptive power of speech. So, too, it would reflect something of the mental force of the subject. Emotional manifestations are not alone produced by the exhibition of photographs in cases of this class. Such manifestations are to be expected where mothers are called

to the witness chair to speak upon any branch of the case. I am of the opinion that no error was committed by the admission of the photograph.

Hearing in Bank denied.

All the Justices concurred.