[No. 18122.  In Bank.—March 13, 1894.]

D. L. HEALY ET UX., RESPONDENTS, v. THE VI-
SALIA AND TULARE RAILROAD COMPANY,
APPELLANT.

NEGLIGENCE—OVERTURNING OF HAND-CAR—EVIDENCE—OPINION OF WIT-
NESS.—In an action to recover for injuries caused by the overturning
of a hand-car upon which a passenger was being conveyed upon defend-
ant's road, the testimony of another passenger upon the same trip who
was sitting on the rear end of the hand-car at the time it was thrown
from the track, in answer to a question as to whether, under the circum-
stances, it was possible for an ordinary person, sitting in the position of
the plaintiff, to stand the force of the jar and still retain his seat upon
the car, does not fall within the rule which excludes the opinion of a
witness.

ID.—OPINION IN CONNECTION WITH STATEMENT OF FACTS.—The opinion
of a witness may be received in connection with his statement of the
facts upon which it is based, when the impressions or sensations caused
by external objects are not susceptible of exact reproduction or descrip-
tion in words, and the judgment or opinion of the witness by whom they
have been experienced is the only mode by which they can be presented
to a jury.

ID.—WIDTH OF CAR—APPEARANCE OF PLAINTIFF.—Opinion evidence that
the hand-car was too narrow for the track, and also as to the appearance
of plaintiff immediately after the accident, may be given by witnesses
who observed the facts.

ID.—OPINION OF MEDICAL WITNESS—REFERENCE TO "CASES ON RECORD"
—MEDICAL BOOKS.—Although medical books themselves cannot be read
in evidence, yet a physician who testifies as an expert witness may
state not only his opinion but the grounds of his opinion, although in
some degree founded on books, as a part of his general knowledge, and
the reference of such witness to "cases on record" in connection with
his opinion is not incompetent, nor in effect permitting the introduc-
tion of medical books to the jury.

ID.—OPINION EVIDENCE—OBJECTION UPON APPEAL FOR THE FIRST TIME.
Objection to the opinion evidence of a physician upon the ground that
it was not adapted to the facts shown in the case, or that it was not
based upon a hypothesis consistent with those facts, cannot be urged
upon appeal for the first time, where no objection of this character was
made at the trial.

ID.—RESULT OF INJURY—INABILITY OF PLAINTIFF TO DO HOUSEHOLD
WORK.—The testimony of the plaintiff that prior to the time of the
accident she was able to do all of her household work, and since the
accident had occurred she had not been able to do such work, is compe-
tent and admissible for the purpose of showing the extent and character
of the injury sustained.

APPEAL from a judgment of the Superior Court of
Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Bradley & Farnsworth,* and *N. O. Bradley,* for Appellant.

The court erred in allowing the witness Ashmead to testify as to whether it was possible for a person sitting in the position Mrs. Healy was in to stand the force of the jars and still retain her seat upon the cars, as it called for the opinion of the witness, and for a like reason it was error for the court to allow testimony of the witness that he thought the car was too narrow for the track. (*Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 59; *Kauffman* v. *Maier,* 94 Cal. 280; *Shafter* v. *Evans,* 53 Cal. 32; *Enright* v. *Railroad Co.,* 33 Cal. 236; *New England Glass Co.* v. *Lovell,* 7 Cush. 321; *White* v. *Ballou,* 8 Allen, 408; *Ferguson* v. *Hubbell,* 97 N. Y. 507; 49 Am. Rep. 544.) The court erred in allowing Dr. Pace to testify as to the effect the injuries received would have on the plaintiff according to the "cases on record," as the course pursued amounted to the introduction in evidence of the record of the cases. (1 Greenleaf on Evidence, sec. 440; *Blair* v. *Madison Co.,* 81 Iowa, 313; *Gallagher* v. *Market St. Ry. Co.,* 67 Cal. 13; *Fisher* v. *Southern Pac. R. R. Co.,* 89 Cal. 399.) The court erred in allowing testimony as to how the plaintiff looked immediately after the accident. (*Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 59; *Kauffman* v. *Maier,* 94 Cal. 280.) The court erred in allowing Mrs. Healy to testify that prior to the accident she was able to do all the household work, and that since the accident she had not been able to do the work, as the wife's time and service belong to the husband, who must sue alone for any loss thereof. (*Matthew* v. *Central Pac. R. R. Co.,* 63 Cal. 450; *Tell* v. *Gibson,* 66 Cal. 247; *Sheldon* v. *Steamship Uncle Sam,* 18 Cal. 527; 79 Am. Dec. 193; *Atchison etc. R. R.* v. *McGinnis,* 46 Kan. 109; *City of Wyandotte* v. *Agan,* 37 Kan. 528; *Smith* v. *City of St. Joseph,* 55 Mo. 456; 17 Am. Rep. 660; *Hunt* v. *Town of Winfield,* 36 Wis. 154; 17 Am. Rep. 482; *Filer* v. *New York etc. R. R. Co.,*

49 N. Y. 47; 10 Am. Rep. 327; *King* v. *Thompson*, 87 Pa. St. 365; 30 Am. Rep. 364; 3 Sutherland on Damages, 720, 723.)

*Charles G. Lamberson*, and *S. J. Hinds*, for Respondents.

It was not error for the court to allow Ashmead to testify that he thought the car was too narrow for the track, and the parties made no objection which would authorize them to reserve an exception to the testimony given. (*Brumley* v. *Flint*, 87 Cal. 471.) It was not error for the court to permit the witness Ashmead to testify that Mrs. Healy could not stand the force of the cars and retain her seat upon the car, as the testimony was not in the nature of opinions. (*Hanna* v. *Barker*, 6 Col. 303; *Baltimore etc. Turnpike Co.* v. *Cassell*, 66 Md. 419; 59 Am. Rep. 175; *Baltimore etc. Turnpike Co.* v. *Crowther*, 63 Md. 568; *McCormick Harvesting Machine Co.* v. *Cochran*, 64 Mich. 636; *Grimmell* v. *Chicago etc. R. R. Co.*, 73 Iowa, 93; *Freeman* v. *Travelers' Ins. Co.*, 144 Mass. 572; *Tompkins* v. *Toland*, 46 Tex. 584; *Killian* v. *Augusta etc. R. R. Co.*, 78 Ga. 749; *Louisville etc. Ry. Co.* v. *Donnegan*, 111 Ind. 179; 1 Sutherland on Damages, sec. 786; 1 Wharton on Evidence, 510–13; *Carthage Turnpike Co.* v. *Andrews*, 102 Ind. 138; *Yost* v. *Conroy*, 92 Ind. 464; *Atchison etc. R. R. Co.* v. *Miller*, 39 Kan. 419; *Commonwealth* v. *Sturtivant*, 117 Mass. 122; 19 Am. Rep. 401; *State* v. *Shinborn*, 46 N. H. 501; *City of Parsons* v. *Lindsay*, 26 Kan. 432; *Parker* v. *Boston etc. Steamship Co.*, 109 Mass. 449; *State* v. *Knapp*, 45 N. H. 148; *Campbell* v. *State*, 23 Ala. 44; *Merkle* v. *Township of Bennington*, 68 Mich. 133; *Laughlin* v. *Street R. R. of Grand Rapids*, 63 Mich. 220; *Ward* v. *Charleston City R. R. Co.*, 19 S. C. 521; 45 Am. Rep. 794; *Pollock* v. *Gantt*, 69 Ala. 373; *Ware* v. *Morgan*, 67 Ala. 461; *Georgia R. R. Co.* v. *Bryans*, 77 Ga. 429; *Butterfield* v. *Gilchrist*, 63 Mich. 155; *Bridger* v. *Asheville etc. R. R. Co.*, 25 S. C. 24; *Fort Worth etc. R. R. Co.* v. *Thompson*, 75 Tex. 501; *Travelers' Ins. Co.* v. *Sheppard*, 85 Ga. 751; *Armstrong* v. *Chicago etc.*

*R. R. Co.,* 45 Minn. 85.)  It was not error to permit the witnesses not experts to testify as to what seemed to be the appearance of the plaintiff immediately after the injury.  (*Weber* v. *City of Creston,* 75 Iowa, 16; *City of Goshen* v. *England,* 119 Ind. 368.)  Nor was it error for the court to permit the physicians to give the testimony which they did, founded in part upon the statements made to them by the injured party.  (*Armstrong* v. *Ackley,* 71 Iowa, 76; *Powell* v. *Augusta etc. R. R. Co.,* 77 Ga. 192; *Jones* v. *Chicago etc. R. R. Co.,* 43 Minn. 279; *Squires* v. *City of Chillicothe,* 89 Mo. 226; *Louisville etc. R. R. Co.* v. *Snyder,* 117 Ind. 435; 10 Am. St. Rep. 60; *Werely* v. *Persons,* 28 N. Y. 344; 84 Am. Dec. 346; *Matteson* v. *N. Y. Central R. R. Co.,* 35 N. Y. 487; 91 Am. Dec. 67; 1 Wharton on Evidence, 3d ed., sec. 268.)  The court did not err in refusing to exclude the testimony of Hattie Healy as to her inability to perform her work, and as her testimony was only directed to showing the extent of her injuries, and as no damages were claimed in the complaint or proven for loss occasioned by impaired capacity to labor, the jury could not have founded their verdict upon such theory.  (*Grandona* v. *Lovdal,* 70 Cal. 161; *Dabovich* v. *Emeric,* 12 Cal. 171; 1 Estee's Pleadings, sec. 326; *Stevenson* v. *Smith,* 28 Cal. 102; 87 Am. Dec. 107; *Gay* v. *Winter,* 34 Cal. 153; *Lewiston Turnpike Co.* v. *Shasta etc. W. R. Co.,* 41 Cal. 562; *Campbell* v. *Water and Min. Co.,* 35 Cal. 679.)

HARRISON, J.—The plaintiffs are husband and wife, and on the 20th of May, 1890, took passage with the defendant, to be carried over its railroad from Visalia to the city of Tulare.  At about a mile before reaching Tulare there was a washout in the track of the defendant, and some passengers, including the plaintiffs, were transferred from the car in which they had been carried to a hand-car, by which the defendant undertook to carry them to Tulare.  Mrs. Healy took her seat upon the forward end of the hand-car, with her feet hanging

down towards the track, and after they had gone some distance the hand-car left the track, and Mrs. Healy, falling to the ground, was run over by it, and received serious injuries, for which the present action was brought. The jury rendered a verdict in favor of the plaintiffs for seven thousand two hundred dollars, and the defendant has appealed.

1. One Ashmead was a passenger on the defendant's road upon the same trip, and was sitting on the rear of the hand-car at the time it was thrown from the track. At the trial his deposition was read in evidence by the plaintiffs, in which, after describing the accident, he was asked: "Under the circumstances, was it possible for an ordinary person, sitting in the position Mrs. Healy was sitting in, to stand the force of the jars and still retain her seat upon the car?" To this question the defendant objected, upon the ground that it was irrelevant, incompetent, and immaterial, and merely called for the opinion of the witness. The objection was overruled, and the defendant excepted.

This question does not fall within the rule which excludes the opinion of a witness. The general rule is that the testimony of a witness shall be limited to the facts of which he has a personal knowledge, and that he shall not give his individual opinion thereon; but in many instances the opinion of a witness may be received in connection with his statement of the facts upon which it is based. The border line between fact and opinion is often very indistinct, and the statement of a fact is frequently only an opinion of the witness. Impressions or sensations caused by external objects are not susceptible of exact reproduction or description in words, nor do they affect every individual alike, and the judgment or opinion of the witnesses by whom they have been experienced is the only mode by which they can be presented to a jury. The question asked of the witness in the present case did not call for an opinion from him depending upon facts which he had subsequently learned, but he was asked to describe the effect

of the concussion or jar caused by the car leaving the track, as one of the facts out of which the injury had arisen, and which he had personally observed and felt.

The position of the plaintiff on the car, as well as his own position thereon, the jumping of the car from the track, the effect produced upon himself, the sensation which he experienced thereby, were all facts which it was competent to show by his testimony, in order that the jury might get as clear an idea as possible of the circumstances under which the accident had occurred. The strength or force of this concussion was also a fact which it was proper to bring before the jury, and as it was not capable of exact measurement by any recognized standard, it was competent for the witness to state its strength or force according to the opinion or judgment which he formed at the time that he felt it. His judgment or opinion of its effect upon an ordinary person would be the most efficient mode of enabling the jury to fully appreciate it, and to give to it its proper consideration in determining its influence in producing the injury. Such testimony is competent upon the same principle that permits evidence showing the strength or force of a blow, the distance at which a sound can be heard, or the direction from which it comes, the speed of a horse, the degree of cold or heat, or of light or darkness. In any such instance a witness who had a personal experience or knowledge of the sensation is competent to testify, although his answer is only his opinion of the matter. The accuracy or strength of his testimony is to be tested by cross-examination. These observations apply also to the testimony of the witness that he thought that the car was too narrow for the track, and also to the testimony of another witness, as to the appearance of the plaintiff immediately after the accident. (*Eyerman* v. *Sheehan,* 52 Mo. 222; *Kelley* v. *Richardson,* 69 Mich. 430; Wharton on Evidence, 512; Rogers on Expert Testimony, sec. 4.)

2. Dr. H. L. Pace, a witness on behalf of the plaintiffs, having testified that an injury to the skull or to the

brow or forehead was likely to produce bad results in future years to the party injured, and, having been asked what were likely to be the results of such injuries, replied: "Well, an injury to the brow, by cases on record and by the profession, are considered—that is, we regard them with a great deal of caution in diagnosis, because there are cases on record"—At this point the defendant's counsel stated "We object as to cases on record, on the ground that it is irrelevant, incompetent, and immaterial to any of the issues in this case." The court overruled the objection, to which the defendant excepted, and the witness thereafter said: "Cases on record, just where such cases have produced in future years death. A blow upon the brow, if a nerve was bruised or severed, would be productive of neuralgia. As to the severing of that nerve just above the eye producing neuralgia I cannot say. An injury of the nose such as this was might produce catarrh. Catarrh would be one of its natural effects, and the injury would affect the lining. The injury to the mucous membrane would necessarily follow this breaking of the bones."

It is now urged that this question was improper, because it was not adapted to the facts that had been shown in the case, and that it was not based upon a hypothesis consistent with those facts. No objection of this character was made at the trial. If it had been then made the form of the question could have been varied so as to obviate the objection.

It is, moreover, urged that it was erroneous to permit the witness to refer to "cases on record," as that in effect is permitting the introduction of medical books to the jury. A comparison of the question put to the witness with his answer will show, however, that the objection made by the defendant does not reach this point, even if it were tenable. The witness was asked as an expert what would be likely to be the result of certain injuries to the brow or forehead. This question sought to obtain from him his own opinion of these results, and the fact that he was called as an expert as-

sumed that his opinion was based, not merely upon the empirical knowledge which he had gained through his own practice, but also that which he had acquired in the study of his profession, and from his intercourse with other members of the same profession. As an expert it was competent for him to give the grounds upon which he based his opinion, as well as the opinion itself, and the fact that his opinion was based upon information derived from his reading did not make it incompetent for him to so state. He was not asked to state, nor did he state, what the "cases on record" were, nor whether the facts of those cases corresponded with the facts of the case on trial, and the contents or statements of the medical books were not given to the jury. But, in making his answer to the question of the plaintiff, he gave as a reason for his opinion, "because" there are cases on record which have resulted in death—an answer that was, doubtless, within the observation of each of the jurymen. This is entirely different from reading medical or scientific books to the jury, or seeking to influence them by opinions or theories contained in such books. The witness was only asked to give his own opinion, which he gave under the sanction of his oath, and which must be assumed to have been a conclusion reached by him after a judicious comparison of all that he had read or learned upon the subject, and upon this opinion, as well as its source, he could be subjected to the most rigid cross-examination. In the *Sussex Peerage case*, 11 Clark & F. 117, it was held that an expert who was called to prove a foreign law "may state what it is from his own knowledge or assist his own knowledge by reference to books and authorities that are within his reach; he may refer to text-books, or to books of decisions, and so render his knowledge more accurate than before." In *Collier* v. *Simpson*, 5 Car. & P. 74, it was held that medical books themselves could not be read, but that the witness, who was the president of the college of physicians, could state, not only his judgment, but the grounds of it, which were

in some degree founded on books, as a part of his general knowledge. (See, also, *State* v. *Baldwin,* 36 Kan. 17; Rogers on Expert Testimony, sec. 177; Wharton on Evidence, sec. 438.)

3. Mrs. Healy testified at the trial that prior to the time of the accident she was able to do all of her household work, and that since the accident occurred she had not been able to do this work. The defendant objected to this testimony upon the ground that it was irrelevant, incompetent, and immaterial, and excepted to the ruling of the court in admitting it. The testimony was, however, competent for the purpose of showing the extent of the injury she had sustained, and it was also material for that purpose, and relevant to the issues in the case. There was no evidence presented of any special damage resulting from this particular effect of the injury, and indeed no evidence was introduced at the trial of the amount of damage that had been sustained; nor did the plaintiffs seek to recover damages for any loss of services. If the defendant had made a special objection to this testimony, that the plaintiffs could not recover in this action for any loss of service caused by the injury to the wife, it could have been made apparent to the jury that the plaintiffs were seeking only to show the extent and character of the physical injury which she had sustained. The decision in *Tell* v. *Gibson,* 66 Cal. 247, was made upon the demurrer to the complaint, but in the present case the demurrer was insufficient to present this objection, as it failed to " distinctly specify" this ground. A demurrer to a complaint upon the ground that several causes of action have been improperly united should specify the several causes of action. It is not sufficient to merely state that several causes of action have been improperly united in the complaint, without at the same time pointing out those to which the demurrer is intended to refer. Moreover, in *Tell* v. *Gibson,* 66 Cal. 247, the loss of the wife's services to the husband was distinctly made one of the elements of damage upon which the judgment was sought,

CI. CAL.—38

and was presented to the witnesses as the basis of their estimate of the damage which she had sustained.

Certain other exceptions were taken to the rulings of the court upon the admission of evidence, but none of these rulings are such as to merit particular notice. The court did not err in refusing the instructions to the jury asked by the defendant, and the instructions to which the defendant has taken objection in its brief were correct. The damage allowed by the jury cannot be deemed excessive, nor can their verdict upon the insufficiency of the evidence be reviewed.

The judgment and order denying a new trial are affirmed.

GAROUTTE, J., PATERSON, J., DE HAVEN, J., and BEATTY, C. J., concurred.

Rehearing denied.