[SEAL] STATE GUARANTY CORPORATION,
By A. E. FALCH
*President*
By BURT WINSLOW
*Secretary*

[Civ. No. 6677. Third Dist. Feb. 23, 1943.]

## ROBERT L. MEGEE, Appellant, v. JOHN FASULIS, Respondent.

Manwell & Manwell for Appellant.

Butler, Van Dyke & Harris for Respondent.

SCHOTTKY, J. pro tem.—Appellant commenced an action against respondent to recover damages for personal injuries. Upon the conclusion of the introduction of evidence, respondent moved for a directed verdict, which motion was denied by the trial court. The jury thereafter returned a verdict in favor of appellant in the sum of $5,000, and respondent thereupon moved for judgment notwithstanding the verdict. Said motion was argued and submitted, and the trial judge vacated and set aside the verdict of the jury and entered judgment in favor of the respondent. This appeal is from said judgment.

Appellant's complaint alleged that respondent operated and conducted the Star Rendezvous and its amusement devices and stairway in a careless and negligent manner in that defendant allowed and permitted discharged .22 caliber cartridge cases ejected from the .22 caliber rifles used in and about the shooting device to lie scattered upon the floor space surrounding said shooting device, and negligently and carelessly permitted said discharged .22 caliber cartridge cases to be upon the stairway; and that on January 13, 1940, as a result of said negligence, appellant, while a patron of respondent, slipped and fell upon said stairway and received the injuries complained of.

Respondent's answer, after admitting ownership and operation of the premises, that appellant was an invitee, and that appellant fell upon said stairway, denied any negligence on respondent's part; alleged contributory negligence on the part of appellant, and affirmatively pleaded that on February 9, 1940, appellant and respondent compromised and settled their differences, and that in consideration of $300 paid to appellant by respondent, appellant executed and de-

278

livered to respondent, in writing, a full and final ''Release of all Claims'' resulting from said accident.

Appellant contends that the trial court erred in granting respondent's motion for judgment notwithstanding the verdict, and there are two main questions that we must determine upon this appeal: First, was the evidence sufficient to support the verdict of the jury upon the issue of negligence? Second, if the first question is answered in the affirmative, was the court justified in determining that the evidence was insufficient to support the implied finding of the jury that the release relied upon was invalid and not binding upon appellant?

As was said by our Supreme Court in the recent case of Neel v. Mannings, Inc., 19 Cal.2d 647 [122 P.2d 576], at page 649:

''It appears to be the well-established law of this state that the power of the trial court to set aside a verdict and enter a contrary judgment is absolutely the same as its power to grant a nonsuit. (Sec. 629, Code Civ. Proc.; *Card* v. *Boms,* 210 Cal. 200 [291 P. 190]; *Hunt* v. *United Bank & Trust Co. of California,* 210 Cal. 108 [291 P. 184]; 7 Cal. Jur. 10-yr.Supp. 268, sec. 65c.) Therefore, a motion for judgment *non obstante veredicto* may properly be granted 'when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' (*Card* v. *Boms, supra,* at page 202.)''

Bearing in mind the rule just quoted, we will endeavor to give a brief summary of the evidence bearing upon the first question stated above.

On January 13, 1940, respondent owned and operated the Star Rendezvous, a Marysville bar and night club. The premises consisted of a bar and dance floor at street level, and certain other rooms, one of which was a lavatory, maintained for the use of male guests and patrons, one floor below the street level. Access to these rooms was had by means of one flight of stairs. The top of this stairway was enclosed on one side by the southerly wall of the premises and on the other by a balustrade several feet high and eight or ten feet

long. Immediately adjacent to this balustrade and parallel thereto, the respondent operated a shooting device consisting of a long cylindrical metal tube into which automatic .22 caliber rifles were discharged at small targets. The larger end of this metal tube, and the end into which the rifles were shot was very close to the entrance to the stairway. In operation, the guns used in this shooting device automatically discharged the used cartridge cases downward, causing them to strike a board and bounce or roll, either into the tube or out upon the floor immediately adjacent to the head of the stairway. While descending this stairway on January 13, 1940, sometime after 5 p.m. for the purpose of entering the lavatory, respondent placed his foot upon the second step from the top, and, according to his testimony, his foot slipped upon some foreign object and he fell heavily down the stairway. At about 7:30 p.m. one W. M. Bright entered the premises looking for appellant, and in descending the stairway he, himself, slipped, and thereupon picked up from the stairway an empty .22 caliber cartridge case and also "saw one or two lying on the floor on the top side."

Respondent states that the uncontradicted evidence established the fact that the accident occurred between 11 and 12 p.m. (Fasulis being the only other witness as to the time), and refers to respondent Fasulis' testimony to this effect. Respondent then argues that Bright slipped upon the empty cartridge case and took it away with him. While it must be conceded that there would be ample support in the record for a finding that the accident happened after Bright had slipped on the cartridge case and had picked it up, yet we cannot say that a contrary finding is not supported by the record. It is true that appellant was not sure as to the time, saying he "was paying no attention to the time," but appellant did testify that he went back to the Star Rendezvous "somewhere in the neighborhood of five o'clock," and that at the time the accident happened he "hadn't been there so very long." We believe that the jury had a right to conclude from all the testimony that appellant had slipped and fallen before Bright slipped and fell. We are convinced further that the jury, which was the sole judge of the weight and effect of the testimony had a right to conclude from the testimony that respondent, as the owner and operator of the premises, had permitted discharged empty cartridge cases

to fall upon the floor adjacent to the stairway and to be upon the stairway, and that appellant had slipped upon one of these empty cartridge cases.

It was not disputed that the stairway was well lighted and that there was a handrail on each side thereof. Appellant testified: "I fell down and I couldn't catch the railing as I went down. I didn't have hold of it at the time and missed it as I fell." Phil J. Divver, city engineer, testified that in his opinion a person going down the stairway would have to take two or three steps before the handrail would become available to him. Appellant testified that he slipped and fell when he placed his foot upon the second step. Under this evidence we cannot agree with respondent's contention that the record shows that appellant was guilty of contributory negligence as a matter of law. Whether appellant was guilty of contributory negligence under the circumstances here present was a question of fact for the jury.

Respondent cites the case of *Marple* v. *Manspeaker*, 88 Cal. App. 682 [263 P. 1022], as being "on all fours with the instant case, both as to questions of fact and as to questions of law." We would be inclined to agree with this contention if we believed it could be held that the jury could place no other construction on the facts than the one placed thereon by respondent. Respondent in his brief quotes much of the language of the opinion in the Marple case, but the following language quoted by respondent, and appearing on page 685, is, in our opinion, sufficient to distinguish that case from the instant case:

"We cannot say as a matter of law that the trial court erred in concluding that the plaintiffs had failed to produce evidence to support the material allegations of their pleadings. After an exhaustive search of the entire record we are unable to discover any testimony tending to sustain the averments that wet materials dropped from the balustrade to the steps upon which Mrs. Marple fell, or that she received her injuries through any defect in the stairway, or as a result of carelessness or negligence upon the part of the defendant, his agent, or servant. There is no showing that the steps were wet, or unsafe in any other respect. The circumstances are not such as to warrant the application of the maxim *res ipsa loquitur*, and without it there is no basis

for the belief that any negligence of the defendant contributed to the injury of the plaintiff Maud Marple. . . .

"The judgment is affirmed."

In the instant case, as we have already pointed out, there was evidence from which the jury had a right to conclude that respondent had so operated the shooting device and so maintained the premises that discharged cartridges had fallen upon the stairway and that appellant had slipped on one of them and had fallen. In the Marple case, it appears from the above quotation that the appellate court, after an exhaustive search of the record, found that "there is no showing that the steps were wet or unsafe in any other respect."

A case much more applicable is the rescent case of *Neel* v. *Mannings, Inc., supra,* decided since the briefs in the instant case were filed. In that case defendant operated a balcony restaurant. Patrons reached the restaurant by a stairway. The stairs were in an open well with handrails. Although familiar with the stairs, plaintiff, while ascending, crowded over to the left to permit other patrons to pass out, and struck her head on the ceiling of the first floor just outside the handrail. In the resulting personal injury action the jury returned a $1,500 verdict in favor of the plaintiff. The trial court granted defendant's motion for judgment notwithstanding the verdict. In reversing the judgment our Supreme Court said at page 652:

"It should be noted at this point that there was no question before the jury as to the legal relationship existing between the parties, for the defendant admitted in its answer that plaintiff entered upon its premises as an invitee. The long-recognized rule governing such status is succinctly stated in *Brinkworth* v. *Sam Seelig Co.,* 51 Cal.App. 668, 670 [197 P. 427]: 'One who, during business hours, lawfully enters a store to purchase goods does so at the implied invitation of the owner (*Herzog* v. *Hemphill,* 7 Cal.App. 116 [93 P. 899]), upon whom the law imposes the duty of exercising ordinary care and prudence to keep the aisles and passageways of the premises, in and through which by their location and arrangement a customer in making purchases is induced to go, in a reasonably safe condition so as to not unnecessarily expose him to danger or accident. (*Hart* v. *Grennell,* 122 N.Y. 371 [25 N.E. 354]; *Schmidt* v. *Bauer,* 80

Cal. 565 [5 L.R.A. 580, 22 P. 256]; *Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473 [1 Ann.Cas. 206, 77 P. 1001].)'

"Under this condition of the evidence the questions presented to the jury for determination were: (1) whether defendant was negligent by reason of the manner in which it maintained the stairway; and if so, (2) whether its negligence was the proximate cause of plaintiff's accident. The jury's findings upon these questions entailed consideration of the following matters: (3) whether plaintiff was negligent; and if so, (4) whether her negligence contributed to her injuries. In deciding these issues, the jury was privileged to consider the defendant's legal obligation to an invitee upon its premises. That there was substantial evidence to support the verdict in this case is apparent from the foregoing recital of the record, when viewed in the light most favorable to plaintiff and without regard for any asserted contradictions in the proof, as the rule requires the court to do in determining the propriety of a judgment *non obstante veredicto.*"

Our conclusion is that there is sufficient evidence in the record to support a finding that appellant's injuries were the proximate result of the negligence of respondent in maintaining said premises and stairway, and that appellant was not guilty of contributory negligence.

We proceed now to consider the question as to whether the trial court was justified in determining that the evidence was insufficient to support the implied finding of the jury that the release relied upon by respondent was invalid and not binding upon appellant.

It is not disputed by appellant that the release was executed by him but it is earnestly contended by appellant that the manner in which the release was obtained and the circumstances surrounding its execution, as shown by evidence or fairly deducible therefrom, were such that the jury was justified in concluding that said release was invalid.

The trial court correctly instructed the jury on this issue that it was for them "to determine from all the evidence and circumstances of this case, whether plaintiff fully understood the contents of the release at the time the same was signed by him and whether the same was fairly made with him, without fraud, misrepresentation or undue influence on the part of defendants or their agent, and unless you do so deter-

mine, you are instructed that such release would not release the defendants from liability.''

Taking into consideration the familiar rule that the evidence must be construed most strongly against the losing party and that every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the verdict of the jury, and that the prevailing party's evidence must ordinarily be accepted as true, and that evidence which is contradictory to it must be disregarded, we will proceed to give a brief summary of the evidence upon this question.

The accident happened January 13, 1940, and appellant entered the Rideout Hospital on January 21, 1940. After he had been confined in the hospital about ten days, G. A. Curtis, the manager of the hospital, approached him with reference to his bill, and was informed by appellant that he was not in a position to pay either the hospital or the doctor. Curtis then got in touch with respondent and was referred to respondent's insurance carrier. He got in touch with the insurance carrier, and a representative of the insurance carrier came to Marysville and talked with Mr. Curtis and Dr. Parkinson, the doctor, but not with appellant. Both the doctor and the hospital were anxious to get their money and agreed with the adjuster that they would accept the sum of $300 in settlement of their combined bills for medical services and hospitalization. A few days before the release was signed by appellant, Curtis told him that the hospital ''couldn't care for him indefinitely without any assurance of funds coming.'' On February 9, 1940, George Bruni, an insurance adjuster representing respondent's insurance carrier, came to the hospital and had another conference with Dr. Parkinson and Mr. Curtis and informed them that he would not pay any more than $300. A little later on the same day Curtis took Bruni to the hospital room where appellant was confined and, according to the testimony of appellant, Bruni told appellant that if he would sign the paper his hospital and doctor bill would be paid and the doctor would have him out of the hospital within ten days, and also told appellant that he had no claim; that he did not read the paper and did not know what was in it; that he received none of the money, but signed the check he received and gave it to Mr. Curtis. Bruni testified that he was in appel-

lant's hospital room not more than ten minutes, so it is apparent that the transaction in appellant's room was not delayed unduly. The testimony of appellant as to what Mr. Bruni told him and that he did not know what he was signing, was contradicted by Curtis and Bruni but we are not here concerned with conflicts in testimony, as it was for the jury to weigh the conflicting testimony. At the time the release was signed appellant was confined to his hospital room; he had a fractured jaw which was infected, and it was apparent to the doctor and to Curtis that he was far from recovered; he had no funds and he had been told by Curtis that the hospital could not continue to care for him without any assurance of funds coming. The record shows that appellant was treated by Dr. Parkinson until sometime in May and then was under treatment in the Veterans' Hospital at Fort Miley for about five months, and that on March 25, 1941, the date of the trial, the condition of his jaw was such that he was still unable to return to work. It is apparent that all the negotiations leading up to the signing of the release were between the doctor and the hospital manager and the insurance adjuster, and that appellant did not have the benefit of any independent advice.

We do not mean to imply that the foregoing is a summary of all the testimony dealing with the matter of the release, or that there was not a great deal of testimony contrary to much of it. But we believe that the foregoing statement is supported by the record and the inferences which may reasonably be drawn therefrom. Upon such a state of facts can it be held that the evidence was insufficient to support the implied finding of the jury that the release relied upon was invalid and not binding upon appellant? We do not think so. We are inclined to agree with the statement made by the learned trial judge when he denied respondent's motion for a directed verdict in these words:

"On the release question, I am satisfied there is enough evidence in the case to be passed to the jury. The court can't say that plaintiff is absolutely bound by that release. The evidence shows without any question this whole arrangement was promoted by Mr. Curtis and the doctor and they wanted their money. Here is a man with a broken jaw that stood a good chance to be kicked out on short notice."

"It is a question for the jury to determine whether or not

he knew of the fact he was absolutely precluded from thereafter maintaining any claim or action for his own personal benefit. There is no question about it there was three hundred dollars for the hospital and doctor. He didn't get five cents, he didn't have the benefit of counsel or any legal advice and while the court might decide one way or the other on the questions of fact, I do think that is a matter the jury should consider.''

Numerous cases have been cited by both appellant and respondent. Each case must, of course, stand upon its own facts. ■ The law presumes fair play; the law does not presume fraud; the law does not presume a mistake of fact. These are matters which must be established by the party claiming fraud, undue influence or mistake of fact. If, however, there is sufficient evidence upon which a finding of fraud, undue influence or mistake of fact may be based, a finding by a jury that a release thus obtained is not binding may not properly be set aside by a trial court.

■ The case of *Tyner* v. *Axt*, 113 Cal.App. 408 [298 P. 537], is similar to the instant case in many respects. In that case the defendant relied upon a release that had been executed by plaintiff while in a hospital recovering from injuries received in an automobile accident. The jury found in favor of plaintiff, and upon appeal the court, in affirming the judgment, said at page 414:

''No point has been made that the compensation named in the release was adequate. The testimony was to the effect that the respondent suffered permanent injuries and as a consequence thereof had not been able to do the work which she had formerly done in order to support herself. Considerable stress has been laid by the appellant upon the fact that the respondent before signing the release called upon her physician for advice. Although he should have occupied a confidential relation at the time, the respondent's physician was a stranger to her three days before, and it appears in the testimony that some time before the signing of the release he had been approached by the claim adjuster for the insurance company with which the appellant was insured, who told the physician that he would pay his bill if the physician could make a settlement with respondent, and that the physician would be taken care of. The physician expressed to the respondent the opinion that if she could get

her expenses paid it would be a good thing. The record discloses that the testimony of the physician was grudgingly given and his testimony and that of other witnesses indicates very strongly that during the transaction the physician was much more interested in having his own compensation secured than in any other matter and as he expressed it, he did not know what rights the respondent had outside of the payment of the medical and hospital bills and did not know whether there was any other money due her.

"We have carefully reviewed the testimony and while there is a conflict therein, the jury had the issues properly submitted to them and their conclusions as to the inferences to be drawn from the evidence cannot be disturbed. (*Smith* v. *Occidental Steamship Co.,* [99 Cal. 462 (34 P. 84)] *supra; Skaggs* v. *Wiley,* 108 Cal.App. 429 [292 P. 132].) The agents of the insurance carrier sought the interview with respondent and their importunities resulted in the execution of the release and the indorsement of the draft. Their visit to her within such a short time after the accident was an intrusion and an imposition upon her right to have her own counsel and to be independently advised in due course of time. Courts have inveighed against similar practices for many years and in many decisions. Transactions of this nature are subject to the closest scrutiny and when revealed as an imposition upon the rights of the injured person, are to be severely condemned (*Winstanley* v. *Ackerman,* 110 Cal.App. 641 [294 P. 449]). It would tax the credulity of any jury, as well as that of any court, to be asked to believe that a woman of sixty years of age, suffering from nervous shock and the bodily injuries which have been heretofore described and laboring under the disabilities which beset her at the time she signed the purported release, was capable of giving to a business transaction the same calm judgment that she might have been able to give to it under normal circumstances, or that she was negligent in not giving to the situation, hastily pressed upon her by the agents of the defendant, the serious care that it should have been given under ordinary conditions. The solemnity of a contract entered into under such circumstances is to be seriously questioned. The surroundings indicate that neither her physician nor the persons acting on behalf of the appellant and the insurance company informed the respondent as to the full ·effect of the execution of the

release or the meaning thereof, and the verdict of the jury, under the authorities hereinbefore cited, finds sufficient support in the evidence to sustain it.''

 The rule applicable to this class of cases has been stated in the case of *Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 462 [34 P. 84], wherein it is said at pages 470-471:

"The general rule is that when a person with a capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding; but it is also a general rule that the assent of a party to a contract is necessary in order that it be binding upon him, and that, if the circumstances of a transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he did not in reality assent to it.''

In the case of *Touhy* v. *Owl Drug Co.*, 6 Cal.App.2d 64 [44 P.2d 405], the court said, at page 67:

"After this cause was submitted for decision on this appeal it became obvious that there existed some error in the date alleged in the complaint as to the time of accident or in the dates contained in the release pleaded; for the complaint alleged that the accident occurred on August 31, 1930, whereas the release pleaded recited that it covered an accident occurring on August 22, 1930. Upon this discovery, and by consent of counsel for both appellant and respondent, under authority of section 956a of the Code of Civil Procedure this court ordered the taking of additional evidence in respect to the date of the accident described in the complaint and of the date of the execution of the release pleaded and of the accident therein described; and also evidence in avoidance of or sustaining the validity of such release, should the evidence connect it up with the accident on which the complaint was founded. Such evidence has been taken and considered by this court, and therefrom it was made to appear without dispute that the accident in question occurred on August 22, 1930, instead of August 31, 1930, as alleged, and that the release pleaded related to that accident and none other. The testimony of plaintiff and her son, on the one side, and of Elwood A. Adamson, a claims adjuster representing the appellant in securing the execution of the release,

on the other, was given and has been considered and weighed by this court. It is not necessary to herein repeat the same, but it will suffice for the purpose of this decision to announce that we find that owing to mental weakness, inexperience and intense suffering of respondent at the time of signing the release and accepting the $25 in consideration thereof, she was caused to believe and understand that she was signing a receipt for money advanced by appellant to pay for medicines and a doctor, and that she was not conscious of the fact that she was signing a full release for compensation for her injuries. The evidence also shows that both respondent and the claims adjuster were in ignorance of the nature and extent of respondent's injuries at that time, and that the apparent gross inadequacy of consideration for the release was the result of this mutual mistake as to such injuries and not to any deliberate or intended purpose on the part of the adjuster to secure an unconscionable advantage. Such, however, would be the result in the light of the facts should this release be sustained. Under the proofs we cannot permit such result. We therefore find that the release pleaded is invalid and does not constitute a defense to the right of respondent to recover.''

Respondent has cited *Berry* v. *Struble,* 20 Cal.App.2d 299 [66 P.2d 746], and *W. Ross Campbell Co.* v. *Sears, Roebuck & Co.,* 136 Cal.App. 765 [29 P.2d 910], as being the leading cases on the point now under discussion. We have examined those cases and, in our opinion, the factual situations therein are so different from the facts of the instant case as to make them of little value as authority here, and we therefore deem it unnecessary to discuss them in detail.

After a thorough examination and consideration of the entire record here, we are convinced that the trial court was in error in determining upon the motion for judgment notwithstanding the verdict that the evidence was insufficient to sustain the implied finding of the jury that the release was invalid and not binding upon appellant. We believe that there was sufficient evidence to justify the jury in concluding that the matter of the settlement and its amount was entirely arranged and agreed upon between the doctor, the hospital and the insurance adjuster; that after it had been fully agreed upon by them, the adjuster, with the release already prepared, was taken by the hospital manager

to the hospital room where appellant had been confined for more than ten days, and appellant was told by the adjuster that if he would sign the paper his hospital and doctor bills would be paid, appellant having some days previous to this, upon informing the hospital manager that he had no funds, been informed by the hospital manager that the hospital could not continue to care for him indefinitely without assurance of funds coming; that appellant was also informed by the adjuster that the doctor would have him out of the hospital in ten days, and that he had no claim; that he did not read the paper and did not know what was in it; that upon receiving the check or draft appellant immediately endorsed it over to the hospital and doctor and received none of it; that appellant was still being treated for the injuries more than a year after the release was signed, and that the amount paid was grossly disproportionate to the injuries sustained; that the adjuster was in the sickroom not more than ten minutes and that appellant did not have the benefit of any independent advice. Taking all of these matters into consideration, together with all the inferences that might reasonably be drawn therefrom, we cannot say that the jury was not justified, under the evidence, in concluding, as it doubtless did conclude, that a release obtained under such circumstances was not so free from misrepresentation, undue influence and mistake, as to be considered binding upon appellant.

In view of the foregoing the judgment is reversed, and the trial court is hereby directed to enter judgment in favor of plaintiff for the sum of $5,000 in accordance with the verdict of the jury rendered in the action.

Thompson, J., and Adams, P. J., concurred.

·A petition for a rehearing was denied March 25, 1943, and respondent's petition for a hearing by the Supreme Court was denied April 22, 1943. Shenk, J., Edmonds, J., and Traynor, J., voted for a hearing.