[Civ. No. 19067.   Second Dist., Div. Two.   Feb. 18, 1953.]

JACK KOSTICK, Appellant, v. ROY E. SWAIN et al.,
Respondents.

Kenneth Sperry for Appellant.

Bauder, Gilbert, Thompson & Kelly; Spray, Gould & Bowers and Malcolm Archbald for Respondents.

MOORE, P. J.—Pursuant to respondents' motion and the ensuing instruction of the court, a verdict was returned against appellant and judgment was entered accordingly. The issue tried was raised by appellant's complaint for damages in the sum of about $37,000 resulting from an automobile collision which allegedly caused appellant serious injuries, and a separate affirmative defense that appellant had released Mr. Swain from all liability for damages arising out of the accident in consideration of the payment of $215. The court having granted respondents' motion for a separate trial of the affirmative defense (Code Civ. Proc., § 597) no question was raised as to the due execution of the release.

Appellant demands a reversal upon two grounds, namely, (1) the evidence proved a mutual mistake of fact on the part of the parties at the time appellant released for a consideration such claims as he had or might have for injuries suffered in a collision with respondent company's automobile driven by its agent, respondent Swain; (2) the court's rulings in rejecting a number of offers of proof of ''material facts and circumstances surrounding the parties at the time the release was negotiated.''

The evidence discloses that on December 14, 1948, while appellant sat in his automobile it was struck in the rear with such violence that it was driven forward 40 to 60 feet. No serious injury was at the time observable. He was dazed and had a slight scratch and a bump on his forehead suffered as he was thrown forward against the steering wheel. He re-

ported the incident to the insurance carrier of Swain on the same day. He was by that party directed to consult a physician and when ready to settle, he should return and receive payment for damages to himself and his automobile. He was promptly examined by his family physician who determined there were no broken bones but advised rest at home for a few days to be relieved of the shock. His only complaint at the time was a stiff neck which was well again at the end of 10 days when appellant resumed work as salesman for a surgical supply company.

When the insurer's adjuster next called appellant, the latter declared his readiness to settle for his damages. But before the insurer would pay, he required a medical report from appellant's physician, Dr. Caraco. The latter's medical finding was that appellant had suffered a ''mild degree cerebral concussion, contusions and abrasions of the chest and shock with no complications, and no physical impairments.'' The advice of the physician was to rest. This he did until December 28, 1948, when he was able to return to work. He was ''discharged as cured'' on that day—just two weeks after the accident.

During the negotiations the possibility that appellant had sustained an unknown injury was not suggested. Both appellant and the insurance carrier assumed his recovery complete. On February 1, 1949, appellant concluded to accept $100 for loss of earnings, $50 damage to his automobile, $50 for pain and suffering and $15 for medical expense, a total of $215 which was paid upon his executing the following:

''RELEASE IN FULL SETTLEMENT AND COMPROMISE

''I, the undersigned, claim to have sustained injury to my person and/or damage to my property by accident on or about Dec. 1st, 1948, and that ROY E. SWAIN, hereinafter called 'Releasee' is legally liable therefor, which liability is denied by Releasee.

''The nature, extent and results of the injuries and/or damage sustained by me are not now all known or anticipated, but I nevertheless desire to settle and compromise said claim in full.

''Therefore, in consideration of the payment to me of Two HUNDRED FIFTEEN DOLLARS ($215.00), receipt of which is hereby acknowledged, I HEREBY RELEASE, DISCHARGE AND ACKNOWLEDGE AS FULLY PAID AND COMPROMISED, ALL CLAIMS, DEMANDS AND CAUSES OF ACTION which I may now have or

may hereafter have to recover damages against Releasee, his legal representatives or successors, for injuries to my person received by me in said accident, INCLUDING DAMAGE, INJURIES OR THE RESULTS OF INJURIES WHICH ARE UNKNOWN TO ME AND UNANTICIPATED BY ME, and for damage, including total loss to and the loss of use of my property. I UNDERSTAND THAT NO PAYMENT OR CONSIDERATION OTHER THAN THE ABOVE HAS BEEN PROMISED ME OR WILL BE PAID TO ME.

"Signed and sealed this 1st day of Feb., 1949, at Long Beach. I have read the above full release. (Claimant to write, 'I have read the above full release.')

| Jack Kostick | 1623 E. 64th St. Long Beach |
| --- | --- |
| (Claimant's Signature) | (Address)'' |

Appellant certified with his own hand that he had read the "above full release" and affixed his signature.

But the worst had not been told. Within less than a month, severe pain invaded appellant's lower back and left arm. Dr. Caraco advised the use of sedatives and sent him to Dr. Alban, an orthopedist. By use of X-rays it was determined that appellant had sustained a slight compression fracture of his fifth cervical vertebra and an injury to the intervertebral disc between the fifth and sixth vertebrae. He was hospitalized and placed in traction where for several weeks he suffered intense pain except when relieved by sedatives. Inasmuch as the sole issue at the trial was the validity of the release, the extent of his suffering and the expense of hospital and surgeons were not then material. However, after leaving the hospital he wore a brace for six months and could not resume his occupation for a year. It was established by the orthopedist that appellant's suffering was the result of injuries sustained in the automobile collision with Mr. Swain in December 1948. He gave prompt notice of rescission and offered to restore the $215.

At the trial it was stipulated that appellant had been thoroughly examined by a reputable physician at the request of respondents on December 9, 1949. The only evidence they offered was that of a radiologist who disputed some of the testimony of the orthopedist concerning the latter's interpretation of some shadowgraphs of the compression fracture. Appellant testified that at the time he executed the release he thought he had fully recovered from his injuries; did not even suspect he had sustained an unknown injury; nothing was said about the possibility of an unknown injury or about

paying him anything for an unknown injury. He believed he had fully recovered from the effects of the accident. He would not have signed the release and accepted the $215 had he known of the injuries to his spine. He admitted having read the release prior to signing it and taking notice of the all-encompassing language: "the nature and extent and results of the injuries sustained by me are not now all known or anticipated, but I nevertheless desire to settle and compromise said claim in full."

Appellant contends that the release was executed by both parties as the result of a mutual mistake of a material fact; that both believed the only injuries sustained by appellant were purely superficial and that he had completedly recovered. However, the trial court was impressed by the decision in *Berry* v. *Struble*, 20 Cal.App.2d 299 [66 P.2d 746], and basing its conclusion upon the doctrines there announced denied relief. Respondents are now sanguine that the Struble case is a complete answer to the complaint and distinguish all the decisions cited by appellant. Mr. Kostick distinguishes the cited opinion and fervently argues the superiority of the legal wisdom and soundness of his own authorities.

It will be borne in mind that the only basis for rescission herein is mutual mistake. Neither fraud, menace, threats, overreaching nor chicanery in any respect is suggested. No proof was offered of what was said in the negotiations other than that given by appellant. The only medical report used in effecting a settlement was that of appellant's physician. No oral promises were made by the adjuster. No suggestion was made as to what would happen in the event the injury should prove to be more far-reaching than it appeared to be. By their agreement they both negatived all thought of a temporary or conditional settlement, whatever might be unfolded out of the unknown. No argument was made to induce appellant to sign the release, nor any suggestion that it was better than the facts justified. Appellant was in the enjoyment of all his faculties and had experienced a long and varied career in the business world. He read the release with an apparently clear understanding that he thereby waived damages for all injuries of whatever nature or extent or results, whether known or anticipated. (See Civ. Code, § 1542.)

In the Struble case the injured party receipted for and accepted $181.47 "in full compromise settlement and satisfaction of and as a sole consideration for the final release and discharge of all actions, claims and demands whatsoever that

now exist or may hereafter accrue against Dr. H. P. Struble . . . for injuries to the person and property of the undersigned and the treatment thereof, and the consequences flowing therefrom, as a result of the accident . . . and for which the undersigned claims the above-named persons . . . are legally liable in damages . . . and the undersigned warrants that no promise or inducement has been offered except as herein set forth . . . The undersigned agrees, as a further consideration and inducement for this compromise settlement, that it shall apply to all unknown and unanticipated injuries and damages resulting from said accident . . . as well as to those now disclosed.''

Not only is the above quoted language less emphatic with reference to the inclusion of the unknown and nonanticipated injuries than the release signed by appellant herein, but the latter went further and released and discharged ''as fully paid and compromised all claims, demands and causes of action which I may now have or may hereafter have . . . including damage, injuries or the result of injuries which are unknown to me and unanticipated by me.'' After reviewing the decisions of *O'Meara* v. *Haiden*, 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381], and *Gambrel* v. *Duensing*, 127 Cal.App. 593 [16 P.2d 284], the court concluded: ''There does not appear to be any principle of public policy which, in the absence of fraud or duress, would forbid parties who are laboring under no disability from releasing for a consideration all claims arising from a particular accident, whether the injuries be known or unknown [authorities]. Other things being equal, it would seem to be merely a question of intent, and this, if sufficiently expressed, should be conclusive . . . While there is evidence in the record which, as the defendant claims, tends to show that plaintiff was not suffering from an unknown injury when the release was executed, we prefer to place our decision on the ground that *the clear intention of the parties was to compromise and release all claims, known or unknown, growing out of the accident*; and this being true, no ground for rescission was shown.'' (Emphasis added.)

*Matthews* v. *Atchison, T. & S. F. Ry. Co.*, 54 Cal.App.2d 549 [129 P.2d 435], lends no support to appellant. The court there found the facts justified the avoidance of the release. The representations with reference to the plaintiff's medical condition were made by the defendant's doctor. Also, it was shown that the plaintiff was required by the employer to sign the release as a condition of his returning to work. He was un-

der the impression that he was fully cured and could continue his work as a switchman. Because of such proof it was held that *Berry* v. *Struble* did not apply.

*Megee* v. *Fasulis*, 57 Cal.App.2d 275 [134 P.2d 815], does not support appellant. It reversed a judgment in favor of the defendant. As invitee on defendant's premises Megee was injured on January 13, 1940, for which he made claim for damages. On February 9th they compromised by the payment to Megee of the sum of $300 for which he executed a "release of all claims" resulting from the accident. At the trial the validity of the release was an issue and under the instructions "to determine from all the evidence and circumstances of this case, whether plaintiff fully understood the contents of the release" the jury by its verdict found that he did not. The proof was that after Megee had been confined in the hospital 10 days, its manager demanded payment of the bill. He was told by Megee that the latter was not in a position to pay either the hospital or the doctor. Thereupon, the manager contacted Fasulis' insurance carrier. Both the hospital and the doctor agreed with the adjuster to accept $300 for their combined claims. The manager then told Megee the hospital "couldn't care for him indefinitely without any assurance of funds coming." On February 9, 1940, pursuant to the adjuster's declaration that he would not pay more than $300, the latter with the manager visited Megee in his room where the adjuster told Megee that if he would sign the paper, his bills would both be paid, the doctor would have him out in 10 days and that he had no claim. Megee did not read the paper; did not know its contents, received no money but endorsed the check to the manager. The adjuster testified he was at Megee's bedside not to exceed 10 minutes. Although both the hospital's manager and the adjuster contradicted Megee's testimony as to the occurrences, the jury found the facts as detailed by Megee. When he signed the release he was suffering from an infected, fractured jaw, had no funds and the manager had told him the hospital could not continue the care of him without a guaranty of payment for his keep. Megee had no independent legal advice but acted on the suggestions of the doctor, the hospital manager and the adjuster.

The foregoing is sufficient to distinguish the evidence in the case of Megee from that of Kostick. Appellant was, so far as he knew, a well man when he released respondents, up and

doing with a clear mind. He was not under the influence of any narcotic, nor was he overpersuaded by promises of what he would get if complications should arise. On the contrary, he settled his claim with the printed declaration before him that "the nature, extent and result" of his injuries, "are not now all known or anticipated." In view of the words he read and which he certified with his own hand that he had read, it is not reasonable to say that he made a mistake of fact. He assumed the risk of discovering subsequently a fractured vertebra, a compressed disc, an impinged nerve, an infection, a tenseness of the nervous system or a mental unbalance to have resulted from his injury. Having made such assumption and accepted a sum of money from respondents, his controversy was at an end.

Section 1542[1] of the Civil Code has no content that can aid appellant. He did not give a "general release" for the settlement, but specific words were used with reference to unknown or unanticipated results of his injury. "An agreement for the assumption of the risk of a mistake may be by specific terms, or it may be the result of custom or statute. To the extent that it is found that there is a term in a valid agreement that the risk as to the existence of an assumed statement of facts is to be upon the transferor, there can be no rescission of the transaction for mistake as to such facts." (Rest. Law on Restitution, § 11, comment c.) When appellant accepted the $215 he knew exactly what he was giving for it. Therefore he made no mistake. (See illustration 9 under comment c, *supra*.) Because, in the light of subsequent events, the release was unfortunate for appellant, the courts cannot rewrite the contract of settlement to increase the compensation for the injury caused by respondents' negligence. It appears to be the rule that where the parties involved in an action for negligence expressly and intentionally settle for unknown injuries the release given by the claimant is incontestable. (*Berry* v. *Struble, supra*; *Hanson* v. *Northern States Power Co.*, 198 Minn. 24 [268 N.W. 642]; Note, 117 A.L.R., p. 1043.)

Appellant has cited a number of decisions which are factually distinguishable. He has invoked the support of (1) *O'Meara* v. *Haiden*, 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381]; (2) *Loaiza* v. *Superior Court*, 85 Cal. 11 [24 P. 707, 20 Am.

---

[1] "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

St.Rep. 197, 9 L.R.A. 376]; (3) *Hudgins* v. *Standard Oil Co.*, 136 Cal.App. 44 [28 P.2d 433]; (4) *Touhy* v. *Owl Drug Co.*, 6 Cal.App.2d 64 [44 P.2d 405]; (5) *Union Pacific Ry. Co.* v. *Zimmer,* 87 Cal.App.2d 524 [197 P.2d 363]; (6) *Gambrel* v. *Duenning,* 127 Cal.App. 593 [16 P.2d 284]; (7) *Backus* v. *Sessions,* 17 Cal.2d 380 [110 P.2d 51]; (8) *Wetzstein* v. *Thomasson,* 34 Cal.App.2d 554 [93 P.2d 1028]; (9) *Jordan* v. *Guerra,* 23 Cal.2d 469 [144 P.2d 349]. The first (1) and second (2) involved only "general" releases. (See Note, 117 A.L.R., p. 1043.) In the third (3) only some of the many injuries sustained by Hudgins were considered at the time of the release. He was in such pain at the time he did not read the release. In the fourth (4) Touhy was suffering from mental weakness when he signed the release. In the fifth (5) the representations as to the defendant's condition were made by the doctors of the railroad company.[2] In the sixth (6) the plaintiff received a severe blow on her forehead. On the second day thereafter while the lady was "nervous and all to pieces" and suffering pain in her head and nose and before she had consulted a lawyer, two agents of the defendant's insurer called on Mrs. Gambrel and obtained the release. She did not understand it. Upon the evidence the jury determined that the rescission of the plaintiff's release should be enforced for mutual mistake. The release was general in nature and the plaintiff had no knowledge at the time of signing the release that her eyesight had been impaired. In the seventh (7) the injured man was not able mentally or physically to consider and know the significance of the release, which fact was known to the defendant. On the day after the accident the adjuster for Mr. Sessions' insurance carrier, accompanied by its physician, called on the plaintiff at the hospital. They discussed a settlement following which Backus agreed to accept $800 for a general release of all damages. The court found that plaintiff was "dazed and in a semi-conscious condition and was without capacity to contract and was unaware of his rights and injuries." In the eighth (8) the plaintiff suffered injuries received from an automobile accident on December 4th. On the same day and on the fifth an adjuster for the insurance company called at her home and discussed a possible settlement. On the seventh he called and obtained her signature to a writing which

---

[2]Zimmer having made a settlement, rescinded it, whereupon the railway company sued for declaratory relief.

"purported to be a release of all claims for damages" and paid her $175. She was told that such money was to cover doctor bills and to pay the lady who would operate plaintiff's florist shop, and was assured that future developments in her condition "would be taken care of." Because of the fraud and "high pressure" of the adjuster and the physical and nervous condition of the lady the trial court found the release void. Such finding was warranted by the evidence. In the ninth (9) the court affirmed the order denying judgment notwithstanding the verdict. It is thus seen that none of the cited decisions is in the same class with the controversy at bar or is remotely akin to *Berry* v. *Struble, supra.* Inasmuch as the subject of rescission or releases has been discussed generously by the courts of this state, it is deemed inadvisable to review the decisions of sister states.

### No PREJUDICE BY RULINGS REJECTING OFFERS OF EVIDENCE

Assignment is made of the court's exclusion of certain evidence. He says that after the "report of loss" by appellant was shown to have been before the adjuster at the time of settlement, he offered the document in evidence. Objection to it by respondents was sustained on the grounds that it was irrelevant and referred to collateral matters. The ruling was correct. No facts were pertinent at the hearing except such as showed a mutual mistake or the converse. Those were fully developed by appellant. The ground for a directed verdict was not a want of evidence of appellant's mistake, but the specific release of respondents. Bills incurred by appellant after the release were utterly immaterial as to whether a verdict should be directed.

Neither was it error to exclude appellant's testimony as to whether at the time of the release he "intended to settle or waive any claims" he had as to unknown injuries. He had already testified that he "would not have signed the release then and accepted the sum of $215 in settlement" of his claim if he had known he had an injury to his vertebra and the intervertebral disc.

No prejudice was suffered by reason of the exclusion of Dr. Weaver's neurological report. He had evidently made an examination of appellant while the latter was under Dr. Alban's care and no doubt the orthopedist had been influenced by the report in shaping his testimony for the trial. However, there was no proof that it was prepared under the supervision of Dr. Alban. It is the work of an independent physician whose findings and suggestions might not have been

wholly adopted by Dr. Alban. Also, neither Dr. Weaver nor "other qualified witness testified to its identity and mode of its preparation," and whether it was made in the regular course of business, at or near the time of its preparation and whether the sources of information, method and time of preparation were such as to justify its admission. (Code Civ. Proc., § 1953f.) ▮▮ Merely because a doctor, in support of his medical opinion, may repeat the patient's history of his injury and refer to cases of record, authority is not thereby given to introduce the medical report of an absent witness without the statutory foundation for its admission. The authorities cited by appellant (*Rohner* v. *Cross*, 121 Cal. 667 [9 P.2d 509]; *Healy* v. *Visalia & T. R. Co.*, 101 Cal. 585 [36 P. 125], and *Carney* v. *R.K.O. Radio Pictures, Inc.*, 78 Cal.App.2d 659 [178 P.2d 482]) are therefore not pertinent.

Moreover, the report of Dr. Weaver was irrelevant to the issue of whether there was a mutual mistake in the execution of the release and the payment of $215.

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied March 6, 1953, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1953. Carter, J., was of the opinion that the petition should be granted.